## John N. Cushing *vs.* Wells, Fargo & Company.

In an action against a common carrier for failing to deliver on demand ninety double eagles of the coinage of the United States, received in a bag from the plaintiff's agent in Mexico, since the passage of the act of congress making treasury notes a legal tender for the payment of debts, to carry to the plaintiff in this state, the measure of damages is the value, computed in such treasury notes, of the coin considered as a commodity, at the time when and place where it should have been delivered, with interest on such amount from the date of demand. HOAR, J., dissenting.

CONTRACT for the value of certain gold coin, alleged to have been intrusted, by the plaintiff's agent, to the defendant corporation, as common carriers, and to have been specially insured by them against loss, all as indicated in the following receipt and certificate :

" Wells, Fargó & Co.'s Express. Acapulco, Oct. 15th, 1862. Value, $1800. Received of James Cook one package of gold coin addressed to John N. Cushing, which we agree to forward to Newburyport, Mass., and deliver to address. In no event to be liable beyond our route as herein receipted. It is further agreed, and is part of the consideration of this contract, that Wells, Fargo & Co. are not to be responsible except as forwarders, nor for any loss or damage arising from the dangers of railroad, ocean or river navigation, fire, &c., unless specially insured by them and so specified in this receipt. For the proprietors, C. R. Payne, Agent. Charge, $54. C. O. D."

" We certify that the package of coin mentioned in this receipt and valued at eighteen hundred dollars is covered by insurance effected in the Marine Insurance Co., London. This insurance is made absolute and no return of premium to be made under any circumstances. Insured against total loss only.

" C. R. Payne, Ag't W. F. & Co.    $13.50."

At the trial, before *Hoar*, J., the defendants admitted the plaintiff's right to recover, and it was agreed that a verdict should be rendered for him and the case reserved for the full court for the assessment of damages. The material facts are stated in the opinion.

Cushing *v.* Wells, Fargo & Company.

*S. B. Ives, Jr., & J. H. Ellis*, for the plaintiff.

*A. Russ & G. M. Read*, for the defendants.

CHAPMAN, J. The defendants are common carriers, and received from the plaintiff's agent at Acapulco in Mexico, in October 1862, a canvas bag containing ninety double eagles, of the coinage of the United States, to carry and deliver to the plaintiff at Newburyport. It has not been delivered, and the defendants admit the plaintiff's right to recover. It being agreed that the premium on gold in the market at the time when the package should have been delivered, November 1, 1862, was thirty per cent., a question is raised as to the amount of damages to which the plaintiff is entitled.

If it had been a contract to pay the plaintiff ninety double eagles of the coinage of the United States, no question could exist. The plaintiff could recover eighteen hundred dollars only. *Wood* v. *Bullens*, 6 Allen, 516. *Bush* v. *Baldrey*, 11 Allen, 367. But it was not a contract to pay money. It was a contract of bailment to carry and deliver a specific article. The plaintiff was entitled to the bag and the identical pieces of coin which were in it. The neglect or refusal to deliver them when they were demanded was a tort. In England an action of detinue lay at common law to recover money in a chest or bag, or particular pieces of silver or gold. Com. Dig. Detinue, B. So an action of trover, which cannot be maintained for money had and received to the plaintiff's use, would lie for the conversion of money in a bag. *Jackson* v. *Anderson*, 4 Taunt. 24. *Orton* v. *Butler*, 5 B. & Ald. 652. And as replevin lies in this Commonwealth for goods wrongfully detained, it could have been maintained to recover this property, if it could have been come at to be replevied. Thus it appears that the law regards this bag of coin, not as money had and received to the plaintiff's use, which might be paid in any other money, and for the nondelivery of which the plaintiff must declare in the money counts, but as a commodity, each particular part of which belonged to the plaintiff while in the possession of the defendants as carriers, and for the nondelivery of which at Newburyport they were chargeable as wrongdoers.

In an action like the present, the rule of damages is the market value of the goods at the place of delivery, and at the time when they should have been delivered, with interest from that time.  *Spring* v. *Haskell,* 4 Allen, 112.  But the question arises whether coined money in a bag can legally have a different value as a commodity from what it would have as money in an action on a contract for the payment of a given number of dollars in coin.  That it may have a different value in fact is certain  For example, among dealers in rare coins particular coins of certain species and dates have, for a long time, possessed a market value much greater than their statute value; and if a carrier who is intrusted with such coins to carry and deliver at a certain place may convert them to his own use, and be liable only for their statute value, the legal remedy against him is very defective.  And before the act authorizing the issue of treasury notes was passed, (U. S. St. 1862, *c.* 33,) silver dollars were used to a great extent in the manufacture of certain kinds of silver ware, and were purchased for that purpose at a premium of from three to five per cent.  If a manufacturer in the country had purchased a quantity of such dollars in New York to be carried to his factory, and the carrier might convert them to his own use and deliver other money in their stead, the manufacturer would be exposed to a loss without a legal remedy.  As they were not purchased to be used as coin, and would have lost none of their value to him by defacing or obliterating the coinage stamp, it is evident that he dealt in them as a mere commodity and not as money; and there are no principles of public policy that are violated by such dealing.  These instances are referred to for the purpose of showing that in fact coins may sometimes have a market value as a commodity which exceeds their statute value; and that the owner who thus deals in them ought to have a remedy against a wrongdoer to the extent of such market value, unless some statute or some legal principle forbids it.  We are not aware, however, that any legal tribunal has had occasion to consider the rule of damages in such cases.

In the present case, the double eagles, at the time and place

where they were to be delivered, would have been worth thirty per cent. more than treasury notes; and, if they can be treated as a commodity in rendering a judgment, which the defendants may discharge by the payment of treasury notes, they should be estimated at their market value in treasury notes.

It was held in *Essex Co.* v. *Pacific Mills*, 14 Allen, 389, that, when rent was payable in silver of a certain fineness, its value should be estimated in treasury notes, because these notes are the most common currency in use and most easily procured, and by which it is to be presumed that the debtor will satisfy the judgment.

In *Sears* v. *Dewing*, 14 Allen, 413, which was an action to recover rent due upon a lease, in which the lessee agreed to pay "the yearly rent of four ounces, two pennyweights and twelve grains of pure gold, in coined money," it was held by a majority of the court that, though the gold was by the terms of the contract to be paid in the form of money, yet the contract regarded it as a commodity, and the value of the gold should be estimated in treasury notes, and the judgment rendered for its value in treasury notes. That case sanctions the principle that parties may so shape their contracts as to treat coined money, to be paid in performance of a contract, as a commodity; that its value as such is not fixed by law, and that the rule of damages for the breach of such a contract is the market value of the coin in treasury notes. If this be so, the same rule of damages should be applied to a case like this, where the only duty of the defendants was to carry and deliver the article as a commodity.

There is nothing in these decisions that contravenes the act of congress above referred to. It provides that the paper money, the issue of which it authorizes, " shall be lawful money, and a legal tender in payment of all debts, public and private, within the United States, except duties on imports, and interest" on certain bonds. This language is limited to " the payment of debts " of certain classes. Since the passage of that act, other acts have been passed limiting its application still further, and creating important distinctions between coin and treasury notes in the payment of debts.

In *Wood* v. *Bullens,* the contract was of such a character that the court were not authorized to treat it otherwise than as a promise to pay the coin at its statute value. In *Bush* v. *Baldrey,* the question was merely, whether coin, taken as money in payment of an amount due for services, was chargeable to the party receiving it, at any other rate than its statute value, in the absence of any agreement in regard to it. There was no occasion in either case to consider whether the principles therein applied would be applicable to a case like this. In the former case the difficulty of enforcing a contract for a certain number of dollars payable in coin as money, was stated to be a want of authority in the court to render a specific judgment, designating the species of currency in which it should be paid. In both cases the same rule is adhered to; to wit, that what the parties have dealt with as money is to be estimated or computed as money. See also *Howe* v. *Nickerson,* 14 Allen, 400; *Stanwood* v. *Flagg, ante,* 124.

But the statute does not provide that the owners of coin may not deal with it as a commodity; and when they thus deal with it, there is no provision that if one wrongfully converts it to his own use, the only damages that can be recovered against him shall be its statute value, payable in treasury notes. As it requires importers, and the obligors in certain bonds, to pay in coin, it would be strange if, when one of these persons is compelled to purchase coin to pay these duties or this interest, and intrusts it to a carrier to deliver it, his only remedy against the carrier for its loss or its misappropriation was to recover its statute value, payable in treasury notes.

The construction of such a statute should not be extended unnecessarily, and we are of opinion that its provisions and its policy will not be in any way contravened by holding that the plaintiff is entitled to recover of the defendants the market value of his property estimated in currency.

Although this is an action of contract, yet it is brought to recover damages for nonperformance of the defendants' duty as carriers. The plaintiff might have declared in tort, and the rule of damages would have been the same in either case.

The defendants gave a receipt in Acapulco which contains in the margin the words and figures, " Value, $1800;" and there is a certificate of the defendants' agent appended to it stating that the coin was insured in the Marine Insurance Company of London, for that sum. It has not been contended in argument that this affects the question before us. It is a valuation of the property in Mexico, but does not authorize the defendants to deliver at Newburyport anything else instead of the identical coins which were contained in the bag there referred to.

It is not necessary to consider what would have been the assessment of damages if, before verdict, the defendants had brought the double eagles into court and tendered them to the plaintiff. After judgment, they could not, of course, be tendered in payment except as coin at their statute value. But this condition of things results from the wrongful act of the defendants, in not having delivered them at the time and place agreed upon, and thereby enabling themselves to tender treasury notes in their stead in payment of a judgment for damages. The legal principles which would prevent the defendants from tendering the identical coins in payment of the execution, at their assessed value, prevent the plaintiff from enforcing payment in anything but treasury notes, and enable the defendants to sell the coins at their market value and thus indemnify themselves.

A majority of the court are of opinion that the plaintiff is entitled to recover the sum of eighteen hundred dollars, with thirty per cent. in addition, and interest on the amount from the time of the demand, which is agreed to be about November 1, 1862.

HOAR, J. The decision which the court have made of this case is obviously so very equitable, that it is not agreeable to dissent from it. But there is a legal objection to their conclusion which seems to me insuperable. The rule of damages is clear; and the only question is, what is the value of ninety double eagles of the coinage of the United States? The value of the canvas bag in which the coins were contained is not in dispute.

The value of a double eagle is fixed by a statute of the United

States at twenty dollars. There was no evidence that these double eagles had any value as a commodity, different from or additional to their value as coins. Any other gold double eagles of the coinage of the United States were worth just as much. Calling them a commodity does not therefore help the matter It is a commodity the value of which is fixed by law.

I feel bound to adhere to the doctrine stated in *Bush* v. *Baldrey*, 11 Allen, 369, that "the coined dollar of gold, fixed by law as of the value of a dollar, cannot be treated by any judicial tribunal, in any computation or judgment, as having another or different value;" and it seems to me as applicable to this case as to that. The statute has prescribed a rule of value, which the courts cannot disregard.

There are great evils and injustice consequent upon the use of two kinds of currency, made of equal value by law, but not so in fact; but they cannot be avoided while such an unfortunate condition of things exists. There is no more injustice in fixing the plaintiff's damages by the gold standard, than there was in rendering the judgment in *Wood* v. *Bullens*, if a debt contracted in gold can be satisfied by a payment in treasury notes. But, in *Wood* v. *Bullens*, the court thought they had no right to render a judgment for anything but dollars, and that they could not take judicial notice of the fact that some kinds of dollars were regarded as of different values at different times.

The remedy for the inconvenience which may result from the legislation of congress is not, in my judgment, to be sought in undertaking to assess in paper the value of the gold coins of the United States at a different rate from that established by law. According to the decision of my brethren, if the defendants should find the lost bag of coin, they could not tender them in payment of their own assessed value.

*Judgment for the plaintiff for the larger sum.*