## ALEXANDER GLENN V. Z. W. MATHEWS.

1. ILLEGAL CONTRACT.—A contract for the purpose of acquiring a tract of land by the statute of limitations of five years, and in which one of the contracting parties, having no title, makes to the other a deed, with warranty, for the land, to be used as a "deed duly recorded" in the acquisition of said land, is illegal, and from its breach no action would lie.

2. DAMAGES ON BREACH OF WARRANTY are ordinarily the purchase-money and interest which may be shown by other evidence than the recitals in the deed; and upon allegation and proof of want of any consideration for the land, the damages, on eviction, could be only nominal.

ERROR from Austin.    Tried below before the Hon. Livingston Lindsay.

This was a suit by Z. W. Mathews, administrator of F. R. Penrice, deceased, against Alex. Glenn, upon a covenant of warranty in a deed executed by Glenn to Penrice, January 1, 1859, for a labor of land on the Brazos river, in Austin county.    The consideration in the warranty deed was $1,200, which sum, with interest and costs of eviction, were demanded, Penrice having been evicted from said land by Freeman and David George, heirs of the original grantee of the labor, and who held the paramount title.

The defendant pleaded illegality of the contract between him and Penrice, as follows:

"And for further answer this defendant denies all and singular the allegations in plaintiff's petition, except such as are hereinafter specially admitted.

"Defendant admits the execution of the bond for title and deed referred to in plaintiff's petition, together with covenants of warranty; also the suit and eviction by Freeman and David George; also that the defendant had notice of the pendency of said suit; but he very specially denies that plaintiff's said intestate, F. R. Penrice, deceased, purchased of defendant or entered upon and took possession of said land in good faith, as is alleged by plaintiff.

" Defendant denies that he ever received any consideration for said land or for the execution of said title bond, deed, and covenant of warranty, except as hereinafter stated.

" Defendant further says that at the time of the execution of said title bond, said land was unoccupied, and said F. R. Penrice desired to take possession of said land under color of title, and he applied to defendant to make him title to the same, so as to enable him to hold the same by prescription under a deed duly recorded.

" Defendant further says that at the especial instance and request of said F. R. Penrice, and for his accommodation, and without consideration, except as hereinafter stated, and for the purpose of enabling said Penrice to hold said land by prescription, he (defendant) executed said title bond and said deeds, with covenants of warranty, and he, the said Penrice, agreed at the time to hold said defendant harmless from any suit or suits that might be instituted for the recovery of said land, and from all costs of such suits, and to not hold him responsible on said warranty ; that in fact said sale and said title bond and deed was a sham arrangement entered into between said F. R. Penrice and this defendant and at the especial request of said Penrice.

" Defendant further says that it was especially understood that this defendant was to receive no consideration for said land or for the execution of the title to the same.

" Defendant admits that it was a part of the arrangement between the parties to said title bond at the time of its execution, in order that there should be an appearance of a consideration for said land, that said Penrice should deliver to defendant a note on Joe Foster for four hundred dollars ; and it was understood and agreed at the time that this defendant was to hold said note, and account for the same, or the proceeds thereof, on a final settlement of accounts between the parties, and that he did afterwards collect the money on the same.

"He further states that said Penrice was then owing this defendant one hundred and fifty dollars on a balance of accounts, and that the same was agreed at the time to be liquidated and settled out of the proceeds of said note, which said balance of accounts has never been settled in any other manner.

"Defendant also admits that at the time of the execution of said deed said Penrice gave to him a draft on William M. Rice & Co., of Houston, for the sum of eight hundred dollars, but that the same was a sham arrangement, entered into between the parties at the instance of said Penrice, and that no consideration in fact passed between the parties to said deed, but that in pursuance with the aforesaid arrangement defendant took said draft to Houston, received the money on the same, and paid it over to said Penrice at Hempstead on his return.

"Defendant further says that thereafter, to wit, on the —— day of ——, A. D. 1859, or the —— day of ——, A. D. 1860, said Penrice, for the protection of this defendant, made a statement in writing, witnessed by A. J. Bell and D. Y. Portis, showing the nature of the entire transaction, admitting the same to have been a bogus arrangement, entered into at his request, and that this defendant was to be at no costs or expense on account of any suit or suits that might be brought against him on account of said sale and deed to said land. A substantial copy of said statement in writing is hereto attached, marked " A," and is made a part of this answer.

"Defendant further says that, by agreement of himself and said Penrice, said written statement was placed in the hands of one Clinton Fort, of said Austin county, for safe-keeping, and this defendant has not seen the same since that time.

"He further states that the said Fort is now dead, and that he has applied unsuccessfully to E. T. Bonney, who is administrator of said Fort's estate, for said written instrument, and he believes, and so charges, the same is lost.

" He further states that the family of said Clinton Fort, deceased, have all removed beyond the limits of this State, and are beyond the process of this court, and that all the property and papers of said deceased are in the hands of said Bonney as administrator.

" Defendant further says that by reason of the institution of this suit he has been compelled to employ attorneys at an expense of, to wit, $350, and he pleads the same, together with the aforesaid $150, balance of accounts, in offset to whatever he may be held liable for on account of the aforesaid Joe Foster.

" Defendant further says that the entire transaction relative to said land, said title bond and deed, and also the pretended consideration therefor, was, upon the part of said Penrice, a fraud from its incipiency, and designed to enable him to hold said land by limitation under a deed duly recorded.

" Wherefore this defendant prays that he may be discharged with his costs.

" Defendant withdraws all his answers and pleas heretofore filed."

## "A."

This is to show that Alexander Glenn made me a deed to a labor of land lying east of the Brazos river, in Austin county, it being labor No. 9, or adjoining labor No. 8, below the road, for the pretended consideration of twelve hundred dollars. Now, I did give the said Glenn a draft on William M. Rice & Co., Houston, for $800, which money said Glenn did pay over to me again in Hempstead, on his return from Houston, as agreed upon between us, and I also gave the said Glenn a promissory note on Joe Foster for $400, which amounted to twelve hundred dollars. Now, the said Glenn was to keep said note, and to account to me for the same hereafter in our final settlement. And I further certify that said sale and deed was not *bona fide*, but only done at my request and sham between him and me, and that

the said Glenn is not to be at any costs or expense in any suit or suits that may be brought against me or him on account of such sale or deed of said labor of land.

BELLVILLE, *Dec.* 10, 1860.

F. R. PENRICE.

Witness:
  D. Y. PORTIS,
  A. J. BELL.

STATE OF TEXAS, ⎱
*Austin County.* ⎰

I, Alexander Glenn, do solemnly swear that all the material allegations set forth in this answer are true, and that Exhibit "A" is a substantial copy of the original as written by him at the time.

ALEXANDER GLENN.

Subscribed and sworn to before me December 9, A. D. 1868.                   JOHN W. GOODE,
                                        *Clerk D. C., A. C.*

Demurrer to the answer was sustained by the court. A jury was waived, and the court gave judgment for $1,200 and interest, costs of the eviction suit and costs; which judgment Glenn, by writ of error, asks may be revised.

*A Chesley*, for plaintiff in error.

No brief for defendant in error.

MOORE, ASSOCIATE JUSTICE.—The record does not disclose nor does the argument of counsel suggest the ground upon which the general exception to the amended answer of the plaintiff in error was sustained, and we are unable to perceive any valid objection to the answer which warrants the judgment. If the matters stated in the answer are true, it certainly needs no argument to show that the contract on

which the action is brought was in contravention of public policy and manifestly fraudulent.

While our statutes of limitations are most liberal in their provisions for the protection of occupants against those who assert adverse or conflicting titles, they were not enacted with the view or intention to provide the means by which parties may, with premeditation and design, filch property from those to whom it justly and honestly belongs. And though it may be that, as between the owner and occupant, the latter cannot be deprived of the benefit of the statute by proof that he entered and held the land with such fraudulent intent, when he has held actual, visible, notorious, and adverse possession for sufficient length of time to bar the owner, yet it by no means follows that if the occupant is evicted by the owner, and the fraudulent intent with which he took possession is defeated, that he can maintain an action against a participant in such illegal and immoral intent and purpose, no matter however great may have been the gain of the one and the loss of the other therefrom. That contracts against public policy or to effect and consummate a fraud are illegal and void, and that courts of justice will neither carry them into effect nor relieve against them when consummated, are principles of law too familiar and well established to need reference to authorities.

If defendant's intestate paid plaintiff in error the consideration expressed for his participation and assistance in the fraudulent contrivance by which he designed getting into possession of the land described in the deed, under color of title, the failure to consummate the purpose designed affords him no ground of action. Whatever loss he may have incurred by reason of his fraudulent contrivance to pervert and prostitute the law to an immoral purpose, he is justly left to bear it as a penalty for his fraud. Nor need we cite authorities to prove that though the contract is in writing parol evidence is admissible to show its real character, although the written instrument is thereby contradicted.

But even though the facts alleged did not, as they must clearly do, show that the covenant, for the alleged breach of which the suit is brought, was fraudulent and void, still the demurrer should not have been sustained. As a general rule, the damages which the vendee is entitled to recover for a breach of covenant for title is the purchase-money and interest. It is a familiar principle that the recital in the deed of the amount paid by the purchaser is not conclusive, and that the real consideration may be shown by parol evidence. (Gibson v. Fifer, 21 Tex., 260.) If, therefore, the deed was a mere voluntary conveyance, and defendant's intestate paid no consideration whatever for it, it cannot be held that he has sustained more than mere nominal damages by the eviction.

The judgment is reversed and the cause remanded.

REVERSED AND REMANDED.