62  209
82  112
62  209
90  587

Houston & T. C. R'y Co. v. M. L. Jackson.

(Case No. 1653.)

1. COMMON CARRIER — INTEREST.—Where a common carrier fails to transport produce destined for market and received by him, in the condition in which he receives it and without unnecessary delay, the owner is entitled, among other elements of damage, by way of indemnity, to eight per cent. interest on the value of the commodity from the time it should have been delivered at its market destination by the carrier. The fact that the owner was paying interest on a debt which the produce shipped was intended to satisfy, neither adds to his right to recover interest for the delay nor enlarges the liability of the carrier. (The circumstances under which a claim for interest may be allowed, treated at length and many authorities cited in the opinion.)

APPEAL from Limestone. Tried below before the Hon. L. D. Bradley.

*Geo. Goldthwaite,* for appellant.

*A. C. Prendergast,* for appellee.

*L. J. Farrar,* also for appellee, on the question of interest, cited: R. S., art. 283; Wolfe v. Lacy, 30 Tex., 349; Fowler v. Davenport, 21 Tex., 635; Chicago R. R. Co. v. Ames, 40 Ill., 249; Wait's Actions and Defenses, vol. 4, pp. 138-9.

STAYTON, ASSOCIATE JUSTICE.— This action was brought by the appellee to recover from the appellant, a common carrier, damages alleged to have been incurred by the plaintiff in consequence of the failure of the appellant to transport with reasonable dispatch a large number of bales of cotton delivered to it by him to be carried to the

city of Galveston and there delivered to P. J. Willis & Bro., by whom it was to be sold, on arrival, for account of appellee.

The appellee was a cotton buyer doing business at Kosse, on the line of appellant's railway, and the cotton as purchased was delivered to the appellant, who executed bills of lading therefor, but a large part of the cotton was not transported within a reasonable time after bills of lading were delivered, though ultimately taken to Galveston by the appellant.

The various items of damage are particularly set forth in the petition, and embraced loss in weight and decline in price during the delay, cotton destroyed by cattle, depreciation in the grade and value of the cotton while in the possession of the carrier by exposure to the weather, loss on pickings on arrival at Galveston, cost of picking; and he also claimed by way of damage a named sum paid to his commission merchant in Galveston as interest, which would not have accrued if his cotton had been transported within a reasonable time after bills of lading were executed.

The appellant answered by general demurrer and general denial.

The cause was tried without a jury and the conclusions of fact found by the court are as follows:

"*First.* The plaintiff was a merchant in the town of Kosse, in Limestone county, Texas, and the defendant a common carrier, with its line of road running through said town, as alleged in plaintiff's petition, in the years 1880 and 1881.

"*Second.* That the plaintiff purchased during the cotton season, beginning August 16, 1880, and ending March 16, 1881, five hundred and ninety-seven bales of cotton, for which defendant executed bills of lading as it was tendered for shipment at the time stated in plaintiff's exhibit 'B.'

"*Third.* That on all the cotton received by the defendant for shipment after September 14, 1880, there was a damage of $5 per bale, that is on four hundred and seventy-six bales, making an aggregate damage of $2,380, and that one hundred and twenty-one bales of the five hundred and ninety-seven were shipped by the defendant promptly.

"*Fourth.* That in consequence of the failure of defendant to ship the four hundred and seventy-six bales within a reasonable time after bills of lading were executed therefor, the plaintiff sustained a further loss, by reason of a further decline in the market where the cotton was consigned at Galveston, of $1,483.32, as shown by plaintiff's exhibit 'B.'

"*Fifth.* That plaintiff suffered a further loss of $63.21 in the

way of pickings, and that said loss on said four hundred and seventy-six bales of cotton was due to the failure to ship said cotton after the bills of lading were executed therefor.

"*Sixth.* That two hundred and eighty-seven pounds of plaintiff's cotton, of the value of $28.70, was destroyed by the cattle in the town of Kosse after the defendant executed bills of lading therefor.

"*Seventh.* That plaintiff was indebted to P. J. Willis & Bro., of Galveston, a considerable amount, which indebtedness the said cotton was intended to pay off, and that the plaintiff paid interest on said indebtedness at the rate of one per cent. per month, or in the aggregate $243.50 on said indebtedness from and after September 14, 1880.

"*Eighth.* That plaintiff paid to have about seventy-five bales of his four hundred and seventy-six bales picked, the sum of $56.25; said pickings being rendered necessary by defendant's failure to ship said cotton within a reasonable time after bills of lading were executed therefor.

"*Ninth.* That of the said four hundred and seventy-six bales there was little or none thereof that was shipped in the order in which it was presented for shipment."

On these conclusions of fact the court below held, as matter of law, "that the several items of damage set forth above (in the conclusions of fact) are proper elements of damage, and under the facts of this case, and under the law regulating common carriers in this state, and I therefore render judgment in favor of plaintiffs against defendant for $4,255.08, the aggregate amount of said items and costs of suit."

The appellant presents in the brief but two assignments of error.

The first assignment relates to the item of interest paid to P. J. Willis & Bro., as stated in the seventh conclusion of fact, and it is urged that in the case made interest so paid is not a proper element of damage.

The statute of this state provides that, "where common carriers receive goods for transportation into their warehouses or depots they shall forward them in the order in which they are received, the first received to be first forwarded, without giving the preference to one over another, and in case they shall fail to do so, they shall be liable, absolutely, for all losses occurring while the goods remain and for all damages occasioned or in any wise resulting from the delay; *provided*, that the trip or voyage shall be considered as having commenced from the time of the signing of the bill of lading, and the

liability of the common carrier shall attach, as at common law, from and after such signing." R. S., 283.

It is not denied that there was an unreasonable delay in transporting the cotton, for which damage was given at the rate of $5 per bale, after the same was received by the appellant and bills of lading executed therefor; nor can it be denied that the cotton of other persons received by the railway company after that of the appellee was transported before his.

The terms of the statute are very broad, and evidently give the right to recover damages on account of the common carrier's default, for any injury which in a legal sense can be said to be caused by that default.

The allowance of interest by way of damages has not in this state been confined to those cases in which interest is expressly given by statute.

It has been held that on a contract to deliver chattels, where the purchase money has been paid, the highest price at any time between the day when the delivery should be made and the day of trial, with interest from the time when delivery should have been made, is the measure of damage for the breach of contract. Calvit v. McFadden, 13 Tex., 324. This rule was varied somewhat in Masterson v. Goodlett, 46 Tex., 403; but the right to interest for failure to deliver was recognized. Some qualification of the rule was also made as to the time when the value should be estimated, in Heilbroner v. Douglass, 45 Tex., 406, but the rule as to allowance of interest was adhered to.

Interest has been allowed on the value of personal property converted. Grimes v. Watkins, 59 Tex., 140; Hudson v. Wilkinson, 61 Tex., 610.

Interest is allowed on breach of warranty in sale of land (Turner v. Miller, 42 Tex., 418; Glenn v. Mathews, 44 Tex., 400); and the same rule prevails on breach of warranty in sale of chattels unless varied by special circumstances. Anderson v. Duffield, 8 Tex., 237; Scranton v. Tilley, 16 Tex., 183; Anding v. Perkins, 29 Tex., 348.

For conversion or detention of money, interest has been allowed. Commercial & Agricultural Bank v. Jones, 18 Tex., 811; Close v. Fields, 13 Tex., 623.

In Fowler v. Davenport, 21 Tex., 635, which was an action against a common carrier for failure to deliver articles which the carrier undertook to transport, it was said, "upon contracts in which an agreement to pay interest is expressed, or can be implied, the interest is a legal incident, and it is held to be the duty of the court to instruct the jury to give interest. There it is a matter of law. In

other cases it is a matter of fact, as damages in other cases, and may be allowed by the jury by analogy to interest. In such cases it is not an incident to the debt, but may be allowed under circumstances by way of mulct or punishment for some fraud, delinquency or injustice of the debtor, or for some injury done by him to the creditor. Renss. G. F. *v.* Reid, 5 Cow., 614." This rule was followed and interest allowed in the case of Wolfe *v.* Lacy, 30 Tex., 350, which was a suit against a common carrier for injury done to cotton while in course of transportation.

The rule in reference to the non-delivery of goods by a common carrier is thus stated by Mr. Sedgwick: "As a general rule, where goods are intrusted to a carrier and they are not delivered according to the contract, the value of the goods, *with interest thereon* from the day when they should have been delivered, is the measure of damages." 2 Sedgwick, 94.

The rule is thus stated in Sutherland on Damages, vol. 3, 238: "Interest is generally added, in this country, to the amount allowed as damages, on the generally accepted principles which govern the allowance of interest; it should be added as a necessary part of the indemnity the shipper or owner is entitled to for the loss or injury to his goods. But in some instances, under the influence of some early decisions and the reasons upon which they proceed, the allowance or withholding of interest is left to the discretion of the jury." The same rule is laid down by Mr. Field in the following language: "Where goods have been damaged in the course of transportation through the fault of the carrier, the rule of damages is the difference between the value of the goods as they are and the value as they should have been at the time and place where they were to be delivered according to the contract, and to which interest is to be added; but from which the freight should be deducted where it has not been advanced." Field's Law of Damages, sec. 378.

The principle announced by these authors is well sustained by the authorities referred to by them in the notes to the sections quoted.

The rule allowing interest in case of non-delivery and in cases in which goods are delivered by the carrier in a damaged condition depends on the same principle; and in either case has for its purpose the giving of compensation or indemnity to the injured party.

To give indemnity, the owner must be placed as near as may be in the same position he would have occupied had the carrier complied with his contract, which was that he would transport the cotton in the condition in which he received it without unnecessary delay.

Had it done so, the owner would, in all probability, within ten days from the time the cotton was delivered to the carrier, have received its value on sale. Of this he was entirely deprived during the time the cotton was permitted to remain at the carrier's depot, and nothing less than interest on the value of the cotton at its place of destination at such time as it should have been delivered will give compensation for the delay. The law estimates under our statute the value of the use of money on written contracts to pay money, to be eight per cent. per annum after the money becomes due, and if it be detained after it is due, the legal right of the creditor to have interest is fixed. This is deemed to be reasonable compensation for the money detained. In the case at bar, the appellee, by the wrongful act of the appellant, was prevented from realizing money which would have been realized but for the negligence or delinquency of the carrier, and no sum less than the law deems reasonable compensation for the detention of a like sum of money as would have been received by the owner can be a just and proper indemnity to him for the deprivation of right which he suffered by the carrier's breach of contract.

The fact that the appellee may have been indebted to P. J. Willis & Bro., and that such debt was an interest-bearing debt, cannot add to the appellee's right to recover, nor can it enlarge the liability of the appellant.

The contract was not made with reference, as between the parties to it, to the pecuniary liabilities of the appellee.

There is no general prayer in the petition for interest, but there is a specific prayer for the exact sum paid as interest by the appellee while the cotton was detained by the appellant, and this asks interest at the rate of one per cent. per month during the time the cotton was detained. The court gave interest at that rate, and we are of the opinion that this was error; for the law, as before said, deems eight per cent. per annum a fair compensation for the use or detention of money in the absence of a contract fixing the value of such use or detention, and the same measure of damage, and not a greater, in cases like this, should be applied for the detention of that which would have produced money by sale on arrival at its contemplated destination.

In this case, from the nature of the transaction, the carrier may be presumed to have known that it was the intention of the owner, directly or indirectly, to convert the cotton into money.

We are of the opinion that, in cases like this, the true measure of damages will include interest, as matter of law, and upon this sub-

ject the following authorities in addition to those before cited may be profitably consulted: Cowley v. Davidson, 13 Minn., 93; Spring v. Haskell, 4 Allen, 113; Cushing v. Wells, Fargo & Co., 98 Mass., 550; Dana v. Fiedler, 12 N. Y., 40; Andrews v. Durant, 18 N. Y., 502; McCormick v. Penn. C. R. R. Co., 49 N. Y., 315; Maguire v. Dinsmore, 62 N. Y., 45; Robinson et al. v. Merchants' D. T. Co., 45 Iowa, 475; Chapman et al. v. Chicago & N. W. R'y Co., 26 Wis., 304; Whitney et al. v. Chicago & N. W. R'y Co., 27 Wis., 348; Mote v. Chicago & N. W. R'y Co., 27 Iowa, 27; Stondenmier v. Williamson, 29 Ala., 569; Pitsinowsky v. Beardsley, Hill & Co., 37 Iowa, 15; Whitworth v. Hart, 22 Ala., 360; Parrott v. K. & N. Y. Ice Co., 46 N. Y., 369; Mailler v. E. P. Line, 61 N. Y., 316; 2 Sedgwick on Damages, 175, and authorities cited in note a.

Interest is a necessary item in the measure of damages in cases of this class, otherwise it is true, as was said in the case of Dana v. Fiedler, "this contradictory result follows, that, while an indemnity is professedly given, the law adopts such a mode of ascertaining its amount that the longer a party is delayed in obtaining it the greater shall its inadequacy become."

Under the rule laid down in Fowler v. Davenport, and Wolfe v. Lacy, the facts of this case justified the judge who tried the cause in giving interest as part of the damage to which the appellee was entitled.

If it appeared that the court below gave interest at the rate of one per cent. per month by way of exemplary damages on account of gross negligence or delinquency of the appellant, were there a prayer for exemplary damages, under the facts shown by the record it might not be necessary to disturb the judgment on the ground that it is excessive.

There is, however, no prayer for such relief, and it appears with reasonable certainty that the court was induced to allow that rate of interest because a like rate of interest was paid by the appellee. As before said, this fact ought not to influence the measure of damages; for the payment of such a rate of interest by the appellee was not the necessary or ordinary result of the breach of contract, and under the facts in proof could not have been within the contemplation of the parties at the time the contract was made.

If exemplary damages had been claimed in the petition, evidence might have been brought to rebut such state of facts as the appellee might have shown for the purpose of recovering damage of that character. Might possibly have brought evidence to show that the failure to comply with the contract was not wilful; that the

delay in the performance of the contract was brought about by some cause which would relieve the carrier of the charge of gross neglect or wilful delinquency.

Such evidence for such a purpose might have been, if produced, sufficient to require the refusal of exemplary damages, which interest in excess of eight per cent. must be considered, but of no value whatever for the purpose of avoiding the payment of such actual damage as resulted from the breach of contract.

The other assignment questions the sufficiency of the evidence to sustain the third conclusion of fact found by the court below.

There was evidence to sustain the finding of the court, and there was some evidence, mostly, if not entirely, testimony of experts, which tended to show that it was not likely that the cotton was injured to the extent found by the court.

The record, however, does not show, in this respect, a finding without sufficient evidence to support it, nor that there is even a preponderance of evidence against the finding, and in this respect, under such state of facts, the finding of the court below must be deemed conclusive of the question.

For the error noticed the judgment of the district court will be reversed and judgment will be here rendered in favor of the appellee against the appellant for the sum of $4,173.91, with interest thereon from October 3, 1883, at the rate of eight per cent. per annum, together with the costs of the court below, and for the appellant for all costs incurred on this appeal; and it is accordingly so ordered.

REVERSED AND RENDERED.

[Opinion delivered October 17, 1884.]