## J. L. TOMPKINS v. EMILY TOLAND, ADM'X, &c.

1. PARTIES—PRACTICE.—In suits for damages for wrongfully suing
   out and levying a writ of sequestration, it is proper practice to make
   the sureties on the sequestration bond parties defendants.
2. SAME.—The sureties have an immediate and direct interest in the
   amount of damages for which they are bound being properly ascer-
   tained, and so they are proper parties to a suit by which this is to
   be done.
3. DAMAGES TO PROPERTY OF AN ESTATE.—For damage to the prop-

erty of an estate, by its wrongful seizure, under a writ of seques-
tration, an action lies. The fact that the petition contains allegations
of wrong to the representative of the estate, will not affect the right
of such representative to sue for the injury to the property in
course of administration.

4. SEAL.—The fact that a sequestration bond does not require a seal,
must be regarded as finally settled.

5. OPINION OF WITNESS.—A question and answer given, which affords
a conclusion from facts known to the witness, may properly go to
the jury as evidence, though the weight of such testimony be little.

6. FACT CASE.—See facts insufficient to support the verdict.

7. DAMAGES.—Decline in the price of cotton after a sequestration levied
upon cotton has been dismissed, and the cotton restored, cannot, in a
suit for damages for seizure of such cotton, be charged to the plain-
tiff in the sequestration suit; nor is loss from improper handling
of such cotton, after it was replevied by defendant, to be charged to
the plaintiff.

8. ASSIGNMENT OF ERROR.—See assignments held indefinite.

ERROR from Washington. Tried below before Hon. I. B.
McFarland.

August 24, 1866, Emily Toland, administratrix of the
estate of Joseph Toland, brought suit against J. L. Tomp-
kins and his sureties on a sequestration bond, for wrongfully
and maliciously suing out a writ of sequestration, under
which fifty-two bales of cotton, the property of said estate,
had been seized, on November 10, 1865, which was released
April 4, 1866. Damages, actual and punitory, claimed at
$10,000.

The pleadings on the part of plaintiff, in addition to alleg-
ing special damage in the decreased price of the cotton, and
expenses incurred to protect it against the unlawful seizure,
also alleged that it was wrongfully and maliciously sued out,
and punitive damages asked.

The defendants excepted to the petition, because of mis-
joinder of parties defendant, and because an action for puni-
tive damages could not be maintained by the administratrix,
and pleaded general denial; that the sequestration pro-
ceedings were had for the purpose of preventing injury by
the acts of the administratrix, alleging ownership by Tomp-

kins of the cotton; that the suit was not oppressive, and that no actual damages were suffered, &c.

On the trial, plaintiff gave in evidence the sequestration proceedings, bond, writ, and sheriff's return, showing the seizure of forty-one bales of cotton of five hundred pounds each. The sequestration suit was dismissed April 4, 1866. Mrs. Emily Toland, plaintiff, testified that the forty-one bales of cotton were seized in Washington county, in the fall of 1865, held a few days, when it was replevied by witness. It was worth twenty-eight to thirty cents a pound when seized. The cotton was not moved until in the summer of 1866, after the suit was dismissed; on account of water and bad roads, witness could not send the cotton to market for several weeks. Witness denied any contract for the sale of the cotton to Tompkins or Tompkins & Murphy. The cotton seized was the crop of 1862 and 1863. None of the crop of 1865 was seized, nor was any of the crop of that year interfered with. She was obliged to keep the cotton in the county while the suit was pending, in order to obtain sureties upon her replevin bond. The cotton, when sold, did not bring half its value when seized.

Cyrus Thompson, by depositions, testified: Cotton ranged in price throughout the month of November, 1865, as follows: At Galveston, ordinary, twenty-one to twenty-two cents, coin, per pound; good ordinary, from twenty-four to twenty-seven cents; low middling, twenty-seven to twenty-nine and a half; and middling, twenty-nine to thirty and a half cents. In December following, ordinary, nineteen to twenty-three cents; good ordinary, from twenty-three to twenty-six cents; low middling, twenty-five to twenty-eight cents; and middling, twenty-seven to thirty cents. In January, 1866, ordinary, twenty-two to twenty-six cents; good ordinary, from twenty-six to twenty-eight cents; low middling, twenty-eight to thirty and a half cents; and middling, thirty to thirty-two cents. In February, 1866, prices about as in January. In March, ordinary, twenty-three to twenty-

five and a half cents; good ordinary, twenty-five to twenty-seven and a half cents; low middling twenty-seven and a half to twenty-nine and a half cents; and middling, twenty-nine to thirty-one and a half cents.

In April, from the 1st to about the 25th of the month, prices ranged, for ordinary, twenty to twenty-four cents; good ordinary, twenty-four to twenty-six cents; low middling, twenty-six to twenty-eight cents; and middling, twenty-eight to thirty cents—opening at the higher and closing at the lower figures. About the 25th April, 1866, or within a day or two thereafter, there began a rapid decline in prices—all grades decreasing about two cents per pound by the close of the month. The quotations are given in gold.

Witness also testified to the seizure, by sequestration in said suit, of eleven bales cotton in Galveston. He also testified that the delay in the sale of that lot did not occasion a loss by diminution of price. Witness was commission merchant, and the plaintiff shipped cotton by him.

Witness J. C. Wallace, by deposition, was asked, "what was cotton worth in November, 1865? what was it worth the following December, January, February, March, and April?" and answered: "Thirty to thirty-one cents per pound, in gold, and fifty-four cents per pound, currency, for good cotton. In the months of December, 1865, and January, February, March, and April, 1866, there was a decline of one to one and a half cents per pound specie per month; last of April, about twenty-six or twenty-seven cents specie for good cotton."

Int. 3. "State whether a party would sustain any damage, and what, by the seizure and holding from market of eighty bales of cotton from November, 1865, to April, 1866." To which he answered: "A party would sustain damage. The depreciation would be about $22.50 per bale, specie, or about $32.50, currency."

For defense, Tompkins exhibited the claim of Tompkins & Murphy, against the estate of Joseph Toland, for a large

sum, and read the proceedings in the Probate Court, authorizing and approving a contract between Mrs. Emily Toland, administratrix of the estate, by which she was to deliver cotton raised on the plantation of the estate upon the debt. He also testified to a contract between himself and Mrs. Emily Toland, for the delivery to him of the crops of 1863 and 1864 upon the claim; that he took legal advice, and acted solely to secure his claim. The claim was compromised by the conveyance of a tract of land, and on that account the suit was dismissed.

The sheriff, M. A. Healy, who made the seizure of the cotton, testified that he had not moved it; that it received no injury while in his possession.

The jury found "for the plaintiff three thousand ·dollars, actual damage," upon which judgment was rendered against all the defendants. (Several of the sureties had died, and suit abated as to them.) Tompkins brought the case by writ of error to this court. The errors assigned were as follows:

"1. The court erred in not sustaining the pleas of defendants to the jurisdiction of the court.

"2. The court erred in not sustaining defendants' demurrers.

"3. The court erred in admitting illegal testimony.

"4. The court erred in its charge to the jury.

"5. The court erred in giving charges asked by plaintiff.

"6. The court erred in refusing charges asked by defendants.

"7. The verdict of the jury is contrary to law.

"8. The verdict of the jury is contrary to the evidence.

"9. The court refused to grant the defendants a new trial."

*Breedlove & Ewing*, and *P. H. & J. T. Swearingen,* for plaintiff in error.

*Sayles & Bassett,* for defendants in error, cited, Dickinson

v. McGraw, 4 Rand., 150; Herndon v. Forney, 4 Ala., 243; Smith v. Eakin, 2 Sneed, 456; Bruce v. Coleman, 1 Handy,. 515; Churchill v. Abraham, 22 Ill., 55; Francis v. Northcote, 6 Tex., 185; Martel v. Martel, 17 Tex., 391; Ponton v. Bellows, 22 Tex., 681; Crayton v. Munger, 9 Tex., 285; Hays v. Bonner, 14 Tex., 631; Albright v. Corley, 40 Tex., 105; 40 Tex., 135; Coburne v. Poe, 40 Tex., 414; Foster v. Champlin, 29 Tex., 22; Bernhard v. De Forrest, 36 Tex., 518; Allen v. Stephanes, 18 Tex., 658; Elliot v. Mitchell, 28 Tex., 105; Howard v. Colquhoun, 28 Tex., 134; Wright v. Hays, 34 Tex., 253; Benj. on Sales, 664; Drake on Attach., sec. 173; McDonald v. Hewitt, 15 Johns., 349; 2 Blackst. Comm., 443; 1 Com. on Con., 3; Jackson v. Myers, 3 Johns., 388; Thornton v. Payne, 5 Johns., 74; 10 Johns., 366.

MOORE, ASSOCIATE JUSTICE.—The court did not err in holding that the sureties in the sequestration bond might be joined in an action with the principal, for the recovery of damages for the wrongful suing out the writ, without a breach of the bond by the principal having been previously judicially ascertained. This construction of the obligation is believed to be to the advantage of the sureties as well as the obligee, and certainly the obligor has no good ground for objecting to it. The construction contended for by the plaintiff's counsel would occasion a circuity of action, delaying and embarrassing the obligee in obtaining redress for the injury done him by the wrongful suing out of the writ, and would also subject the sureties to the costs of two suits instead of one, and to the possible damage of an excessive or improper judgment against the principal, by his collusion with the plaintiff, or his neglect to make a proper defense to the action.

The sureties have an immediate and direct interest in the amount of damages for which they are bound, in default of their principal, being properly ascertained. Therefore, upon principles of equity, they are proper parties to a suit by which

this is to be done. And although we know of no case in
which the precise question has been before this court, this is
believed to be the construction which has been uniformly
given to these and other similar bonds by the profession, and
acted upon by the courts. (See Portier v. Fernandez, 35 Tex.,
536; Ponton v. Bellows, 22 Tex., 681; Martel v. Martel, 17
Tex., 391; Frances v. Northcote, 6 Tex., 185.) A like ruling
seems to have been made in other States on a precisely anal-
ogous question in reference to the liability of the sureties on
attachment bonds. (Herndon v. Forney, 4 Ala., 243; Church-
ill v. Abraham, 22 Ill., 55.)

The demurrer to the petition was properly overruled. It
is quite manifest that the suit was brought for damages
alleged to have been sustained by the estate of Joseph
Toland, deceased, by an unlawful seizure of property of said
estate. It is true, there are in the original petition some
allegations of personal wrongs and injuries to the admin-
istratrix, which seem to have been intended as matter of
aggravation, which are not at all pertinent to the action for
the injury to the estate; to which an exception, if taken,
should have been sustained.

The objections to the evidence, shown by the bills of ex-
ception, are without force. That touching the validity of the
sequestration bond for want of a scroll and seal, has been
heretofore decided by this court, and must now be regarded
as finally settled. The evidence of the witness Wallace
though evidently not of so satisfactory a character if it stood
alone, as it would have been if he had stated the market
price of the cotton at the different periods to which his at-
tention was addressed, it cannot be said that it is altogether
inadmissible. Though the statement he makes is a conclu-
sion, still it is a conclusion of facts which he may know and
be able to testify to, just as readily and certainly as that the
cotton was worth so much per pound on the days in question.
The real objection, if there is any, to the evidence is rather
to its proper weight with the jury than to its admissibility.

By the next assignment of error, we are called upon to review the action of the court in overruling the motion for a new trial. An examination of the entire testimony which went to the jury, constrains us to say, that it is so manifestly insufficient to support the verdict, and the damages found by the jury are, in our opinion, so glaringly excessive, that we are forced to the conclusion, notwithstanding the very objectionable generality of the assignment, that this motion should have been sustained. The evidence, which was admitted over appellant's objection, shows a depreciation of only some thirteen or fourteen hundred dollars, in currency, in the value of the forty-one bales of cotton, which was prevented from being sold by the sequestration, from the time of its seizure to the dismissal of the suit; and the current price of cotton, during the time the suit was pending, testified to by the witness Thompson, shows that the depreciation was certainly no more. The witness Wallace, it is true, also states that the cotton, when levied upon, was worth $250 a bale, and that the estate of Toland was damaged to the extent of one third of its value. Evidently, this statement can only be reconciled with his previous testimony, by supposing that he must have had reference in this part of his deposition to the price for which the cotton ultimately sold, some considerable time after the dismissal of the sequestration suit, and not to its depreciation while the suit was pending. Certainly, if the administratrix or her agents withheld the cotton from market after the dismissal of the suit, she cannot hold Tompkins responsible for the loss sustained by its subsequent decline in value. Nor can she justly attribute to him the damage resulting from the want of proper attention and care of the cotton, after she replevied it from the sheriff.

The other assignments of error are too general to require notice, unless it was plainly apparent that obvious injustice had been done plaintiff in error by the court, in some of the rulings thus complained of. As this is not manifestly the fact, we shall make no comment upon them.

For the error of the court in overruling the motion for a new trial, the judgment is reversed and the cause remanded.

REVERSED AND REMANDED.