THE FORT WORTH & DENVER CITY RAILWAY COMPANY v. G. R. GREATHOUSE.

No. 7028.

**1. Practice—Immaterial Evidence.**—When material facts are proved and there is no conflict in the testimony touching them it is immaterial that objections to interrogatories to other witnesses upon the same facts were improperly overruled. Such testimony is but cumulative. See facts.

**2. Same.**—Where the weights of cattle were in issue and witnesses gave them (the weights), that another witness was allowed to use a memorandum in aid of his memory, if error, was immaterial, as his testimony to the weights was but cumulative. The admission of improper testimony will not be cause for reversal when it is apparent that it had no injurious effect upon the rights of the party complaining.

**3. Expert Testimony—Shrinkage in Weight of Cattle.** — It was competent to allow a witness to give his opinion as to the loss of weight of cattle caused by reason of injuries in a wreck of the train on which shipped, and from the delay caused on the route to Chicago; the witness having qualified himself as an expert, being familiar with the effect of such acts upon the physical condition of cattle from long experience in handling stock in like circumstances and conditions.

**4. Same.** — It was also competent to ask and to have the answer of such expert upon a hypothetical case involving the conditions and circumstances in evidence, as to their effect upon the condition of cattle shipped to market.

**5. State of Market.** — It being shown that the agents of the railway company were informed at the time of receiving the cattle that they were for immediate sale at their destination, it was relevant to show the state of the market at the destination when the cattle should have been delivered, and the lower price when actually delivered.

**6. Jurors Presumed to Understand Charge.**—Jurors will be presumed to understand a charge that presents the law upon the issues of fact involved.

**7. Stipulations by Carrier Against Negligence.** — Where injuries and damages result from negligence of a common carrier they can not be restricted by contract to less than the value of the property destroyed or injured.

**8. Charge.**—It was proper to refuse a charge asked by the defendant that the railway was not liable for injuries done to the cattle by each other, when there was no testimony tending to show such injuries.

**9. Stipulations as to Notice of Claim for Damages to Freight.**—The bill of lading given for the cattle stipulated that the shipper should give notice of any

claim for damages to the nearest station agent, and before the cattle were removed from the place of delivery. Such conditions will only be enforced when shown to be reasonable, when considered in the light of the subject matter and the circumstances.

10. **Interest as Damages.**—Although interest was not asked, it was proper for the jury to allow it from the date of the injury to the property as part of damages.

APPEAL from Wise. Tried below before Hon. JAMES R. ROBINSON, Special District Judge.

The following statement accompanied the opinion:

This suit is by appellee against appellant to recover damages sustained growing out of a violation of shipment of cattle from Harrold, Texas, to Chicago, Ill. The petition in substance alleges that on the 3d day of September, 1887, plaintiff delivered to defendant at Harrold for shipment to Chicago 149 head of beef cattle; that defendant received the cattle and agreed by written contract with plaintiff to transport the cattle to Chicago without delay. They were immediately loaded upon the cars and were in good condition, fat, and suitable for beef, and were in as good condition as any cattle then being shipped to the Chicago market; and were shipped for the purpose of being sold in that market for beef, and the purpose for which they were being shipped was well known to the agent of defendant. The written contract for the shipment of the cattle is attached to and made a part of the petition. It was among other things provided in said contract, that as a condition precedent to plaintiff's right to recover for any damages for loss or injury to his said stock during the transportation thereof, or previous to loading thereof for shipment, he would give notice in writing, verified by affidavit, of his claim therefor, to some general officer of defendant or its nearest station agent, before said stock was removed from the point of shipment or from the place of destination, and before such stock was mingled with other stock, within one day after the delivery of such stock at its point of destination, and before the same shall have been removed, slaughtered, or mingled with other stock; to the end that such claim might be fully and fairly investigated, and that a failure to comply with that provision of the contract should be a complete bar to any recovery of any and all such claims.

It is further alleged in plaintiff's petition, that at the same time and place that plaintiff shipped his cattle, Rush & Hutchinson, a firm composed of William Rush and J. W. Hutchinson, shipped 145 head of beef cattle, I. L. Hutchinson thirty-three head, G. W. Gill and W. L. Rush, who were partners, shipped forty-five head. All of said cattle shipped by said persons were received by defendant, in the same manner and by the same agent of defendant, and were loaded on the same train of cars on which the cattle of plaintiff were loaded, and were to be carried to Chicago; that said persons had a written contract with defendant for carrying their cattle, the same in substance as the one

entered into by plaintiff, and which is made a part of his petition; that all of said cattle were shipped to Chicago to be marketed as beef cattle; that said cattle were shipped as aforesaid on the date aforesaid, and were transported over defendant's line of road to Henrietta, Texas, where they were transferred to the Missouri Pacific Railway; that while being transported over the Missouri Pacific Railway, through the negligence of the Missouri Pacific Railway Company, and by reason of the unsafe condition of said railway, and by reason of said railway being out of repair, said cattle were delayed on the road at a point between Henrietta and Denison, Texas, for a period of twenty hours without food or water; that at a point between Gainesville, on said line, and Denison, by reason of said railway track being out of repair, said train of cars ran off the track and one of plaintiff's cattle was killed, worth $25; that all of said cattle were bruised, injured, and greatly damaged; that two belonging to Rush & Hutchinson were injured so that they were worth $15 less than they were worth before said injury; that by reason of said delays and other delays the cattle had to have an extra feed, which cost plaintiff $15, Rush & Hutchinson $15, Gill $9, and I. L. Hutchinson $8.

That by reason of the cattle being bruised and injured, and by reason of the delay on the road, the cattle lost in weight forty pounds per head, thereby damaging plaintiff in the sum of $150, Rush & Hutchinson $144, Gill and Rush $30.40, and I. L. Hutchinson $36.40; that when the cattle arrived in Chicago the market had declined 15 cents per hundred pounds below what it was when the cattle should have reached there, and thereby plaintiff was damaged in the sum of $200, Rush & Hutchinson $166.47, Gill $129, and I. L. Hutchinson $105.04; that the claims of Rush & Hutchinson, G. W. Gill, and I. L. Hutchinson had been assigned to plaintiff, and defendant had refused to pay plaintiff, to his damage $1200.

The defendants answered by general demurrer and general denial.

The jury returned a verdict in plaintiff's favor for $900, for which amount judgment was rendered against appellant.

The evidence offered in behalf of plaintiff by several witnesses proved the allegations of his petition, in reference to the shipment of the cattle from Harrold to Chicago, and when and how they were injured, and that the injury and delay occurred through the negligence of the Missouri Pacific Railway Company; that the effect of the wreck by which the cattle were injured was to shake them up and skin and bruise them, and that they were confined in the cars about twenty hours longer than they would have been if no wreck had occurred, and that they were delayed in their arrival at Chicago twenty hours. The evidence shows the character and kind of cattle shipped, and the purpose for which they were shipped, being for sale in the Chicago market, and

is further satisfactory in showing that the agent of appellant at Harrold knew of such purpose when the contract was made. Several witnesses testified as to the number of cattle shipped and the weights of the cattle in Chicago, and what effect the injuries and delay would have upon the weights of the cattle, and the condition of the Chicago market when the cattle ought to have arrived and the state of the market when they did arrive. In fact the evidence substantially establishes the items of damages as alleged in the petition. The proof is further satisfactory on the point that appellee was the owner of the claims of damages of the other consignors who shipped with him. No evidence appears showing that plaintiff gave notice to any officer or station agent of appellant concerning the extent of the injuries and damages to the cattle.

No evidence in any branch of the case was introduced by appellant.

*J. M. O'Niell,* for appellant.—1. The court erred in permitting William Rush to use a memorandum, over defendant's objections, for the purpose of refreshing his recollection as to the weights of plaintiff's cattle and the cattle of Rush & Hutchinson in Chicago, and in permitting the witness to testify as to the weights of the cattle from the memorandum. Railway v. Burke, 55 Texas, 323; Miller & English v. Jannett & Franke, 63 Texas, 82; Railway v. Blanton & Co., 63 Texas, 109; 1 Greenl., on Ev., secs. 436–439.

2. It is error to permit a witness to answer a question which seeks to elicit opinions and not facts. Willis & Bro. v. McNeill, 57 Texas, 465; Haynie v. Baylor, 18 Texas, 498; Clardy v. Callicoate, 24 Texas, 170; Cooper v. State, 23 Texas, 331; Rogers on Exp. Test., secs. 8–14.

3. Where the jury are as competent as any other persons to deduce the proper conclusions from a given statement of facts, the opinions of witnesses are not admissible in evidence as to the conclusions or inferences to be drawn from them.

4. An instruction which does not require the jury to find from the evidence, or to "believe from the evidence" the facts assumed in it, is erroneous. Sackett on Instructions to Juries, p. 23; Parker v. Fisher, 39 Ill., 164; Gizler v. Witzel, 82 Ill., 322.

*Carswell, Fuller & Terrell,* for appellee, cited Railway v. Burke, 55 Texas, 340; Pridgen v. Hill, 12 Texas, 378; Mercer v. Hall, 2 Texas, 287; Beaty v. Whitaker, 23 Texas, 529; Johnson v. Brown, 51 Texas, 65; Railway v. Jarrard, 65 Texas, 560; Ins. Co. v. Pruitt, 65 Texas, 125; Loper v. Tel. Co., 70 Texas, 690; Railway v. Trawick, 68 Texas, 314; Railway v. Harris, 67 Texas, 166; Railway v. Fagan, 72 Texas, 127; Tel. Co. v. Sheffield, 71 Texas, 570; Whart. Law of Ev., secs. 509–513, 440, 450–452.

FISHER, JUDGE, *Section B.*—1. Appellant on the trial of the case objected to the fourth and fifth interrogatories propounded by plaintiff to witnesses Meyers and Davidson and the answers thereto, on the ground that they were leading. Without deciding if or not the interrogatories are leading, we think no injury resulted to appellant by their admission in evidence, because the facts of the wreck and the delay inquired about, and the number of cattle in the train at the time, and the results of the wreck as affecting the cattle further inquired about in the interrogatories, are all facts testified to by other witnesses in the case, and concerning which there is no conflict in the evidence. The answers brought out by these interrogatories are simply cumulative of the undisputed evidence in the record.

2. Witness Rush in testifying as to the weights of the cattle of Rush & Hutchinson in Chicago was unable to state from recollection the weights, and was, over the objection of appellant, permitted to use a memorandum in order to refresh his memory as to the weights. It is not necessary for us to pass upon the admissibility of this evidence, for no harm resulted from its admission, as the weights of the cattle shipped by Rush & Hutchinson in Chicago are fully proved by the testimony of G. R. Greathouse, which is not contradicted in any particular, and who agrees in his estimate of weights with the evidence of Rush. The admission of improper evidence upon the trial will not work a reversal when it is apparent that it had no injurious effect upon the rights of a party, and when its effect could not have influenced the jury to arrive at any other result than that reached.

3. Over the objection of appellant, witness Rush was permitted to testify as to what in his opinion, or according to his best judgment, was the loss in weight of the cattle by reason of the injuries occasioned by the wreck and by reason of the delay in getting them to Chicago. The evidence shows that this witness was familiar with the cattle, and testified fully as to the wreck, he being at the time present and witnessed it and its effect upon the cattle. The evidence establishes the fact that he was experienced in shipping cattle, and that he was familiar with the condition of the Chicago market and the time it ordinarily takes to make the run from Harrold to Chicago, and testifies as to the delay occasioned by the wreck and its effect upon the cattle; that they were bruised and jammed together, and that the cattle by reason of the delay were confined in the cars about twenty hours longer than otherwise they would have been if no wreck had occurred, and that confinement in the cars causes cattle to draw up and shrink. The evidence informs us that the cattle at the time of delivery for shipment to the carrier were fat, healthy beeves, fit for the Chicago market. No information is furnished showing what the cattle weighed when shipped. All we have upon this question is evidence fixing the weight at Chicago. It becomes very important to fix the difference in weight, if any, of the

cattle at the place of shipment or of the wreck, and Chicago, in order to ascertain the extent of damages resulting from shrinkage. The effect of the wreck and the delay and injuries occasioned thereby are the only facts shown independent of the opinions of the witnesses that the jury can look to in ascertaining the loss in weight, if any. They have before them no proof as to the difference in weight between Harrold and Chicago. The proof of these facts will not inform the jury what the loss in the weight of the cattle is. It can readily be assumed from these facts that some shrinkage occurred. But the inquiry is the extent of this shrinkage, and this can not be learned simply by proof of facts showing injury. The extent of loss in weight is not a matter of common knowledge that the jury is supposed to be informed of. But the ascertainment of this fact can only be learned from the experience of men who are familiar with the effect of these acts upon the physical condition of the cattle, and whose knowledge is acquired in handling cattle under like circumstances and conditions in which the cattle in controversy were at the time of injury before and after. We think the evidence admissible. Whart. on Ev., secs. 509–513; sec. 444, and notes; sec. 446, and notes; secs. 447, 448, and note 3; secs. 449, 450; Tompkins v. Toland, 46 Texas, 590; Long v. McCauly, 3 S. W. Rep., 691.

For the same reasons as those just considered, objections were made to the testimony of witness Carpenter, with this difference: Carpenter had large experience in the shipment of cattle, but no personal knowledge of the cattle in controversy or of the wreck. The fact of the wreck and its results as to the injury and delay of the cattle in getting them to the place of destination was put to him as a hypothetical case, and his opinion was asked as to the results of these acts in occasioning shrinkage in the cattle and its extent. We think the hypothetical case as presented in the question asked the witness is substantially in accord with the facts. Even though the hypothetical case as stated does not cover the full range of the facts, this alone would not make the question objectionable, provided enough is given upon which the witness can formulate an intelligent opinion. The failure of an accurate statement of all the facts in the case in propounding the hypothetical question does not render it inadmissible, but simply affects the weight of the testimony of the witness in response to the question. For the reasons given in considering the objections to the evidence of witness Rush, we think the opinion of witness Carpenter admissible.

4. Objection is urged to the evidence of witnesses Rush and Greathouse in proof of the condition of the Chicago market, for the reason that appellant or its agent had no notice that the cattle were to be sold in the Chicago market immediately on arrival. This objection is not tenable. The facts show that the agent of appellant at the time of shipment knew that the cattle were being shipped to Chicago for immediate sale. The evidence of Greathouse, uncontradicted, is that the agent

said that the cattle "would go to Chicago in ninety hours and go in on the morning market."

5.  Several objections are urged to the charge of the court.  We deem it unnecessary to discuss in detail all of these objections.  We have carefully examined the charge, and we think it correctly presented the law of the case; and we can not agree with appellant that it was "calculated to mislead and confuse the jury, and that it did not require the jury to base their verdict upon the evidence, but upon what they believed."  To admit that the charge as a whole was calculated to have this effect is to regard the jury that tried this case of such low degree of intelligence that they were incapable of understanding their duty under a charge that would meet the test required by appellant.

6.  Objection is made to the refusal of the court to give a charge requested by appellant to the effect "that if the cattle sold in Chicago for as much as they were worth at Harrold at the time of shipment and the freight charges and expenses of putting them on the market, that they should not find any damages on account of shrinkage in weight or decline in market."  The evidence raises no issue as to the freight charges, and there is no contention made that such charges have not been paid appellant.  This charge is asked upon the assumption that as the contract provides in case of loss or partial loss the value of the cattle at the place of shipment would be the measure of damages, consequently the value of the cattle at Harrold should govern.  We do not deny the privilege of the carrier and shipper to make contracts fixing the valuation of articles shipped that would in some cases be binding and conclusive upon the parties to the contract; but we do hold that when the injuries and damages result from a violation of the contract of shipment growing out of the negligence of the carrier, that it can not restrict and limit its liability to less than the true value of the property.  Railway v. Maddox, 75 Texas, 300; Railway v. Harris, 67 Texas, 169; Boehl v. Railway, 46 N. W. Rep., 334.

The evidence fully establishes the fact that the injuries and damages to the cattle resulted from the negligence of the Missouri Pacific Railway Company, which was carrying the cattle over its line under the contract entered into by appellant and appellee.  No question is raised in this case as to the nonliability of appellant by reason of the damages and injuries occurring off of its line of road.

It is shown by the evidence that the carrier at the time of shipment knew that the cattle were being shipped to Chicago for immediate sale.  As one of the incidents of the contract, it must be held under the facts of this case that the parties bound by it had in contemplation at the time of its execution the fact that the cattle were being shipped to Chicago for sale at the market price existing when the cattle should reach there in a reasonable time.  Under such state of facts the market price of the cattle at the place of destination should govern in order to as-

certain their value.  Railway v. Maddox, 75 Texas, 300; Railway v. Fagan, 72 Texas, 129.  The carrier was bound to deliver the cattle at Chicago within a reasonable time, or the time agreed upon by the parties to the contract.  It is shown that they reached Chicago twenty hours later than they should have.  The difference in the state of the market at the time the cattle were delivered and the time they should have been delivered is shown.  This difference is recoverable.  The shrinkage in weights traceable as the results of the wreck and delay is a proper charge against appellant as damages, the value of this loss of weight to be ascertained by reference to the Chicago market when the cattle ought to have arrived there.

7.  Objection is made to the refusal of the court to give the charge asked by appellant, to the effect "that appellant was not liable for injuries done to the cattle by each other by reason of any inherent vice in the cattle or disposition to hurt each other."  The court in its general charge limited the jury to the consideration of injuries to the cattle that were occasioned by and resulted from the wreck and delay.  Further, there was no evidence upon this point that would justify such a charge.  If the defendant desired to raise this issue it should have done so by pleading and proof.  The burden was upon it to prove that the cattle were injured by their inherent viciousness and disposition to hurt each other.  Boehl v. Railway, 46 N. W. Rep., 334.  It is not intended to hold that if it had been shown from the evidence introduced by the plaintiff that the beeves were injured by reason of the "proper vice" of the animals that the defendant could not urge such facts in defeat of plaintiff's demand in whole or in part.

8.  It is insisted by the appellant that the court erred in overruling its demurrer to plaintiff's petition, "because it does not appear from the allegations that plaintiff gave notice of his claim for damages to the nearest station agent before the cattle were removed from the place of delivery."  Without determining whether this provision in a contract such as this can in any case be enforced, we do not think the appellant has brought itself within the rules laid down in those cases that permit such contracts to be·enforced and that recognize their legality.  When such provisions of a carrier's contract are enforced, it is upon the assumption that such agreement is reasonable when considered in the light of the subject matter of the contract and the circumstances and surroundings of the parties.  To prove that such conditions in a contract are reasonable is a burden resting upon the carrier, who must show by proper pleadings and evidence the existence of facts that call for an enforcement of the condition.  There were no pleadings and proof whatever upon this question coming from the carrier.  Railway v. Fagan, 72 Texas, 132; Railway v. Harris, 67 Texas, 167.

9.  It is insisted that the verdict of the jury exceeded the amount of damages as shown by the evidence.  If interest is added to the sums

and items of damages in evidence in the case it will exceed the amount of plaintiff's recovery.   We think, although there is no pleading asking for interest, that it is proper to allow it in this case on the amount of damages sustained.   Railway v. Jackson, 62 Texas, 212.

We conclude that the case should be affirmed.

*Affirmed.*