WOODBURY et al. v. GALVESTON, H. & S. A. RY. CO. (No. 902.)

(Court of Civil Appeals of Texas. El Paso. Feb. 6, 1919. Rehearing Denied Feb. 27, 1919.)

1. COMMERCE ⬿47—INTERSTATE COMMERCE. — ROUND-TRIP TICKET FROM FOREIGN COUNTRY.

As regards law governing limiting of liability for loss, in the United States, of baggage of a passenger being transported under a ticket bought in Canada for a trip to Texas and return, act of Congress regulating commerce does not apply; there being neither interstate nor foreign commerce.

---

⬿For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

2. COMMERCE ☞47 — PASSENGERS — FOR-
EIGN COUNTRY—LOSS OF BAGGAGE—LAW
GOVERNING.

The law of Canada governs as to right of
carrier to limit liability in case of loss in Unit-
ed States of baggage of passenger traveling on
a ticket for transportation from Canada to
Texas and return.

3. EVIDENCE ☞81 — PRESUMPTION — LAW
OF CANADA.

In the absence of evidence, it will be pre-
sumed that, like the laws of Texas, the laws of
Canada do not permit a carrier to limit its
common-law liability for loss of baggage.

Error from District Court, El Paso Coun-
ty; P. R. Price, Judge.

Action by Mrs. L. H. Woodbury and hus-
band against the Galveston, Harrisburg &
San Antonio Railway Company. Plaintiffs
had judgment for less than claimed, and
bring error. Reversed and rendered.

Rufus B. Daniel, of El Paso, for plaintiffs
in error.

Beall, Kemp & Nagle, of El Paso, and Bak-
er, Botts, Parker & Garwood, of Houston,
for defendant in error.

### Statement of Case.

HIGGINS, J. On January 25, 1917, Mrs.
Woodbury purchased from the Temiskaming
& Northern Ontario Railroad Company, at
Timmins, in the Province of Ontario, Do-
minion of Canada, a coupon ticket good for
transportation from Timmins to El Paso,
Tex., and return. At San Antonio, Tex., she
boarded a train of appellee for passage to
El Paso, traveling upon said ticket. At San
Antonio she checked her trunk to El Paso,
and it was transported upon the same train
as that upon which she was traveling. The
baggagemaster at San Antonio issued to her
an ordinary baggage check for the trunk.
It contained no limitation of liability. The
baggage was checked and transported free
of charge upon the ticket Mrs. Woodbury
was traveling upon. The ticket was not of-
fered in evidence, and the record is silent as
to whether or not it contained any limita-
tion of liability. The train carrying Mrs.
Woodbury and her trunk was wrecked be-
tween San Antonio and El Paso, and the
trunk was destroyed by fire originating from
the wreck. She brought this suit against
appellee to recover the sum of $555.75, the
alleged value of the trunk and its contents.

The following special plea was interposed
by defendant:

"Further answering, defendant says that, if
plaintiff's trunk and contents were lost or de-
stroyed or not delivered to plaintiff, the same
occurred during the year 1917, to wit, during
the month of March, 1917, and that at the time
the plaintiff L. H. Woodbury was traveling on
an interstate or international ticket, purchased

by her during the year 1917, from some point
in Canada and over a route extending through
the various states of the United States into and
through the state of Texas, and that said trunk
and baggage was checked from San Antonio,
Tex., to El Paso, Tex., on said interstate or in-
ternational ticket, and was and is interstate
commerce, and the said plaintiff was then and
there traveling on said ticket as a part of her
trip which she was then and there making from
the Dominion of Canada, through the various
states of the Union, into and through the state
of Texas, and was and is governed by the laws
of the United States and the rules and regula-
tions of Interstate Commerce Commission, and
the said ticket was purchased during the year
1917, and that at the time of the purchase of
said ticket and at the time of checking of said
baggage, the defendant, Galveston, Harrisburg
& San Antonio Railway Company, had duly
promulgated and filed with the Interstate Com-
merce Commission its tariffs, rates, fares, and
charges for transportation between different
points on its lines, and of the amount of bag-
gage checked on each ticket, and of the value of
said baggage, and that under the terms of said
tariffs, rates, and charges so filed with the In-
terstate Commerce Commission, and which had
theretofore been approved by the Interstate
Commerce Commission, and were then and
there in force, and had been duly posted, it was
specially provided that the valuation of said
baggage was limited to the sum of $100, unless
a greater value was declared and paid for by
the passenger, and that said tariffs, rates, and
schedules contained provisions limiting the free
transportation of baggage on the lines of the
defendant company between San Antonio and
El Paso and elsewhere to certain weight and
the liability of the defendant company to $100,
and which tariffs, rates, and schedules had a
table of charges for excess weights and of ex-
cess values, which specially provided that for
excess values in excess of $100, or fractional
part thereof, an additional or special charge
would be made, and defendant alleges that the
said tariffs, rates, and schedules were then and
there in full force and effect, and that plaintiff
did not declare a greater value than $100, and
did not pay for any excess value over and above
$100.

"Plaintiff alleges that, amongst other things,
the said tariffs provided as follows: [Here is
quoted regulations filed with the Interstate
Commerce Commission hereinafter shown].

"And defendant alleges that the plaintiff did
not, when she checked said baggage, or at any
time, declare the value of the baggage so check-
ed to be in excess of $100, and did not pay for
any weight in excess of 150 pounds, or for any
value in excess of $100."

Upon the trial, appellee proved the pro-
mulgation and filing with the Interstate Com-
merce Commission of its tariffs, rates, etc.,
as alleged and its approval by the commis-
sion. It was shown that a copy thereof was
on file in the San Antonio office of defendant.
It was also shown that there was hung in
the depot waiting room at San Antonio over
the ticket office, and also in the baggageroom,
a sign which reads:

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

"Galveston, Harrisburg & San Antonio Railway Company.

"Complete published files of this company's tariffs are located at

"General Freight Office, Houston, Texas (for freight.)

"General Passenger Office, Houston, Texas (for passengers.)

"The rate and fare schedules applying from or at this station and indices of this company's tariffs are on file in this office and may be inspected by any person upon application, and without the assignment of any reason for such desire.

"The agent, or other employé on duty in the office, will lend any assistance desired in securing information from or in interpreting such schedules.

"J. R. Christian, General Freight Agent.

"T. J. Anderson, General Passenger Agent.

"C. K. Dunlap, Traffic Manager."

Mrs. Woodbury made no declaration to appellee of any increased valuation of the trunk, and paid no additional charges in that connection; it appearing that the trunk was checked and transported upon the ticket purchased by Mrs. Woodbury as aforesaid. Mrs. Woodbury had no actual knowledge of the matter relied upon by defendant as limiting its liability for loss of baggage. No agent of defendant informed her at the time she checked her baggage of any limitation of liability if the same was lost.

The case was tried before a jury and submitted upon one special issue, viz.: What was the reasonable value of the trunk and its contents at the time of its loss? This was answered, "$500.00." Upon this answer the court entered judgment in plaintiff's favor for $100, from which she appeals, assigning as error the failure to enter judgment for the full value of the trunk and its contents as found by the jury. The correctness of the court's action in this matter is the question presented for review.

### Opinion.

[1-3] It is the contention of appellant that since the contract of carriage was made in Canada, her rights are governed by the law of that Dominion; and since the record is silent as to the law of Canada, it will be presumed to be the same as the law of Texas, under which a common carrier is not permitted to limit its common-law liability.

On the other hand, appellee contends that the act of Congress regulating common carriers of interstate and foreign commerce, especially the so-called "Cummins Amendment" (Act of August 9th, 1916, c. 301, 39 Stat. 441 [Comp. St. §§ 8592, 8604a]) is applicable, and under this law the limitation of liability is valid and binding upon Mrs. Woodbury. Since the record is silent as to the law of Canada, it will be presumed to be the same as that of the forum. Mrs. Woodbury is seeking to enforce her rights in the courts of Texas. If the facts show that the contract between the parties is governed by the Acts of Congress, then it would be the duty of the courts of Texas to enforce those acts. And if the Acts of Congress are applicable, then it would seem the correct judgment was rendered by the court below. Boston & Maine Railroad Co. v. Hooker, 233 U. S. 97, 34 Sup. Ct. 526, 58 L. Ed. 869, L. R. A. 1915D, 450, Ann. Cas. 1915D, 593.

The entire commerce of the United States, foreign and interstate, is subject to the provisions of the act of Congress. Texas & Pacific Ry. Co. v. Interstate Commerce Commission, 162 U. S. 197, 16 Sup. Ct. 666, 40 L. Ed. 940. The case just cited and Texas & New Orleans Ry. Co. et al. v. Sabine Tram Co., 227 U. S. 111, 33 Sup. Ct. 229, 57 L. Ed. 442, are relied upon by appellee as bringing the shipment of the trunk within the provisions of the Interstate Commerce Law. Act Feb. 4, 1887, c. 104, 24 Stat. 379.

In the Texas & Pacific Railway Company Case, the court considered the validity of a regulation by the Interstate Commerce Commission of rates to be charged in the United States for freight originating in a foreign country and transported upon through bill of lading to a point in the United States. While the particular regulation was not upheld, the power to regulate the rate was sustained.

In the Texas & New Orleans Railway Co. Case, it was held that a shipment destined by the purchaser for export, made by the seller under a local bill of lading from an interior point in Texas to a Texas Gulf port, at which the lumber was unloaded without delay by the purchaser's order into slips or docks in reach of ship's tackle and was then loaded into chartered ships by which it was carried to a foreign port—such shipment not being an isolated one but typical of many others—constitutes foreign commerce, and, as such, was governed by the tariffs on file with the Interstate Commerce Commission, to the exclusion of the rights established by the state Railroad Commission, although the seller had no connection with the lumber after it reached the railway terminus and had no concern with its destination after it came into the hands of the purchaser, and no knowledge thereof, and although the lumber had no definite foreign destination at the time of the initial shipment.

These cases are not regarded as in point. In the first case, the freight originated in a foreign country and was transported upon through bill of lading to a point in the United States. In the second case, the freight originated and was shipped from an interior point in the United States to a foreign country. Mrs. Woodbury's contract was not of that nature. The contract was made at Timmins, in Canada, and called for

transportation from such point in Canada to a point within the United States and return to the point in Canada. The trunk in question was being transported upon this ticket, and was lost upon one stage of the journey in the United States. An inspection of the "Cummins Amendment" approved August 9, 1916, will disclose that it in no wise relates to a contract made in a foreign country for transportation over the rails of common carriers, when such contract is to be begun and completed in such foreign country. In this connection, see recent decision of the Interstate Commerce Commission in Re Heated Car Service Regulations, I. & S. Docket No. 1155, decided July 23, 1918, reported in 50 Interst. Com. Com'n R. 620.

Neither do we think that the contract in question falls within the provisions of section 1 of the original act to regulate commerce and its amendments. Section 8563, U. S. Compiled Statutes 1918. This conclusion we think is supported by holdings to which we will now advert.

In the case of U. S. v. Philadelphia & Reading Ry. Co. (D. C.) 188 Fed. 488, it appears a cargo of sugar was shipped from Hamburg, Germany, destined to Philadelphia for transportation in bond to Raymond, in the province of Alberta, Dominion of Canada. The Philadelphia & Reading Railway Company carried this shipment over a part of the route within the United States at a less rate than would have been lawful if the shipment had originated at Philadelphia. The charging of this rate was alleged by the United States to be a criminal offense. The court held that the act of Congress concerning interstate commerce did not apply to a cargo shipped from Hamburg, Germany, destined as stated in the bill of lading, to Philadelphia, for transportation in bond to Alberta, Canada, and taken to its destination by continuous and uninterrupted transportation, at the hands of successive carriers; there being no delivery or change of title, but the different carriers merely assisting in a continuous transportation from one foreign country to another.

In the matter of Canales v. G., H. & S. A. Ry. Co., 37 Interst. Com. Com'n R. 573, there was a shipment of sugar from Piedras Negras, Mexico, through Eagle Pass, Tex., destined to Agua Prieta, Mexico, and which was reconsigned at Eagle Pass to El Paso. The defendant waybilled the shipment in accordance with the terms of the original bill of lading to Douglas, Ariz., the point within the United States nearest to Agua Prieta, Mexico, and the shipment moved from Eagle Pass, through El Paso, Tex., to Douglas, and five months later was shipped back to El Paso, through Hachita. Canales sought a refund of all charges paid in excess of those which would have accrued for the transportation from Eagle Pass to El Paso if the shipment had moved in accordance with the shipper's instructions. The Interstate Commerce Commission, in passing upon the application, said:

"The overcharges in issue accrued within the United States on traffic moving from a point in Mexico to another point in Mexico. Such transportation is not embraced within the terms of the Act to Regulate Commerce. In U. S. v. P. & R. Ry. Co. (D. C.) 188 Fed. 484, it was held that the so-called Elkins Act is inapplicable to the continuous transportation of goods in bond from a foreign country through the United States to a foreign country. Following that case, in Seymour v. M. L. & T. R. R. & S. S. Co., 35 Interst. Com. Com'n R. 492, which involved alleged overcharges on shipments of sugar from Germany through New Orleans to Eagle Pass and El Paso, destined to points in Mexico, we said that—'The sugar was transported from a nonadjacent foreign country through the United States to destination in an adjacent foreign country.'"

Now, as shown by the facts in this case, Mrs. Woodbury was traveling upon a ticket purchased in Canada which called for transportation from a point in Canada to a point in the United States and return. She was traveling upon that contract, and her trunk was being transported by virtue thereof, when the trunk was lost in the United States by one of the carriers engaged in performing the contract. The contract called for transportation from a point in Canada through the United States and back to the point in Canada. Upon the two authorities last cited, it seems that the act of Congress regulating commerce does not apply to the transportation in question. This being true, the courts of Texas must apply the law of Texas. Under the law of this state, the attempted limitation of liability by a railroad company for lost baggage is invalid. Mexican & National Railroad Co. v. Ware, 60 S. W. 343; Railway Co. v. Maddox, 75 Tex. 300, 12 S. W. 815; Railway Co. v. Greathouse, 82 Tex. 104, 17 S. W. 834.

We are therefore of the opinion that the court below erred in limiting appellant's recovery to $100. The judgment of that court is reversed, and here rendered in favor of appellant for the sum of $500.