JUDGE PRYOR
delivered the opinion oe the court.
The appellee, John Hedger, on the 8th of February, in the year 1872, delivered a number of horses to the agent of the Louisville, Cincinnati & Lexington Railroad Company at its station known as Elliston, on what is called the Short-Line Road, to be shipped to the city of Louisville. After the company had taken possession of the stock, in the attempt to drive them from the pens through a lane, or chute, into, the cars, one of the horses had its leg broken, causing its death.
*647 The present action was instituted against the company for damages, in which it is alleged that the loss sustained by the appellee by reason of the injury to his horse was the result of the carelessness and negligence of the company or its employees; and in an amended petition it is alleged “that by reason of the careless, negligent, and unskillful manner in which the chute leading from defendant’s stock-pens into its cars was constructed and kept by the defendant and its agents the loss was sustained.” The appellant, for answer, denies all negligence, and insists, first, that the common-law liability of common carriers does not apply to the company in its undertaking to carry live-stock; second, that by a special contract made with the appellee the defendant was not liable except for criminal neglect; third, that the loss of the horse was caused by the reckless acts of the appellee and his agents. The law and facts were submitted to the court, and a judgment rendered against the appellant for one hundred and thirty dollars, the value of the horse, from which this appeal is prosecuted.
By the doctrine of the common law, common carriers are made liable for all damages to and loss of goods during transportation, unless, as said by Redfield, “the loss results from the act of God, which is limited to inevitable accident, or from the public enemy. Inevitable accidents are restricted to such as come from a force superior to all human agency, either in their production or resistance.” (2 Redfield on Railways, chap. 26, p. 4.)
A common carrier is in effect an insurer of the goods placed under his charge, and his responsibility begins with their reception, and continues until they reach their place of destination, or where he undertakes to deliver them. This wise and salutary rule of liability had its origin at a time when the demands for carrying freight were not very frequent, and when no such modes or facilities for conveyance existed as railroads, steamboats, turnpikes, etc.; and in the investigation of this case *648 no precedent has been found in any of the earlier elementary books where the responsibility of a common carrier is fixed or even discussed upon his undertaking to carry live-stock. The reason doubtless is that this character of freight did not then enter into or form a part of the business of a common carrier, oi’, in other words, the transportation of live-stock by such modes was unknown to the common law. It would certainly be unreasonable to hold carriers liable for injuries that cattle, hogs, and other live animals might inflict on each other when confined in one car, as is the usual mode of carrying them.
A railroad company does not undertake, unless by special agreement, when live-stock is placed upon its cars, to become liable in the event the stock should injure each other by reason of their own viciousness, or such other accidents as no one could even by the exercise of the greatest diligence prevent. To hold the carrier responsible for all such injuries to this character of freight while in his charge would be imposing a degree of care and diligence that no one would undertake to exercise, and place such a restriction upon trade with reference to the transportation of this kind of property as would result in the abandonment of any such employment. The common-law liability of a common carrier does not apply to a case like this, and for such accidents as are necessarily incident to live animals in their transportation upon our railroads, etc., the carrier can not be held responsible. (Clark v. Syracuse & Rochester Railroad, 4 Kernan, 570; Michigan Southern & Northern Indiana Railroad v. McDonough, 21 Mich. 165; Hall v. Renfro, 3 Met. 51.)
It becomes necessary, however, in this case to determine the liability of the company, and the degree of care and diligence required in the carrying of live freight. In our opinion the company, when it undertakes the exercise of this public employment, should be held to a greater degree of diligence than that required of a mere bailee. The liability of the *649 carrier, it is true, is greatly lessened by relaxing the rule applicable to carrying ordinary goods and wares; still this modification of the principle does not relieve him from that high degree of diligence that the nature of the employment requires.
In the construction of stock-pens and chutes and in affording the means of transportation the company should be held to that degree of care and diligence that a prudent and careful man would exercise in such matters. Although the stringency of the common-law rule does not apply by making it an insurer, still the character of the employment is not changed; and if live-stock should be lost or injured while in the custody and care of the company or its agents for transportation, this should be prima facie evidence of negligence, and the burden of proof is on the carrier to rebut this presumption. In 2 Greenleaf on Evidence, section 219, it is said that “in all cases of loss by a common carrier the burden of proof is on him to show that the loss was occasioned by the act of God, or by public enemies.” The fact that the liability is lessened in cases like this does not change this rule.
It is maintained by the company that although it may have been guilty of ordinary negligence in not providing a sufficient chute, on account of which the horse was injured, yet it is not liable, for the reason that an express contract was made by the company, through its agent, with plaintiff’s agent (the plaintiff consenting thereto), by which the latter agreed to take charge of the stock during transportation, load and unload them with the assistance of the employees of the company, and “ will relieve the company from responsibility for loss and damage to said stock, or for any injury to any person from any cause, except the criminal negligence of its employees.”
•Redfield on Railways (vol. 2, p. 80) says, “It would seem to be the result of the decisions every where that carriers may limit their common-law responsibility as insurers by special *650 contract.” There is no good reason why such contracts should not be deemed valid, and this court in repeated decisions has recognized the right of the carrier to relieve himself from the burden of insurer, but has never gone so far, where the question was directly made, as to adjudge that a common carrier could by contract relieve himself from liability for the loss or injury to property resulting from his own negligence or that of his employees.
In the case of the Adams Express Company v. Nock (2 Duvall, 564) this court, in alluding to the contract affecting merely the liability of the carrier as insurer, said “that analogy, principle, and authority now preponderate decidedly in favor of such contracts when fairly made, without duress impositions, etc.; but no such contract will ever be implied from the mere publication of notice that the carrier will exact conditions essentially variant from those prescribed by law; nor in a case of importunate necessity for immediate transportation and a refusal to carry without a special contract should the exaction of such a contract be sanctioned. This liability should not be restricted upon the implied assent of the owner of the goods, to be presumed from the publication of notices fixing the liability of the carrier; but there must be evidence of an express agreement, either by a special contract entered into by the parties, or by a knowledge of the restriction of liability contained in a public notice on the part of the owner, and his express assent thereto, which is in effect a special contract.” (Davidson v. Graham, 2 Ohio St. Rep. 133.)
If the carrier can release himself by contract for ordinary negligence, he can also for criminal neglect, and in this way assume no responsibility whatever. Such a ruling would dispense with every thing like diligence and honesty in the discharge of these public duties, and be destructive of public interests. No one undertaking such an employment should be allowed to contract so as to relieve himself against *651 his own negligent act, and in determining the question of negligence public policy requires that he should be held to extraordinary diligence. Where the owner contracts, however, to load and unload his stock, and to take charge of them during transportation, as in this case, and does in fact do so, the burden of proof, where the company is charged with negligence for the loss or injury to the stock, is upon the owner, as the party who has the care of the property is presumed to know how the injury occurred, and must himself suffer the loss unless negligence is shown on the part of the carrier or his employees. In this case the company attempted to show that the appellee and his hands, by crowding the stock into the chute against the advice of its agent, caused the injury; while, on the other hand, the appellee introduced proof to show that it resulted from the defective condition of the chute. Upon this point there was conflicting testimony; and while we can not concur with the court below that the company should be held liable as insurers of such property, the judgment must be affirmed upon the issue of fact presented by the pleadings and proof.
The act of the legislature, approved February 8, 1870, authorizing the Lexington & Frankfort Railroad Company (since consolidated with this company) to contract specially for the transportation of live-stock, as the parties might agree, conferred no greater right in this regard than the company already had.
Judgment affirmed.