## J. T. CUNNINGHAM ET AL. V. SAN SABA COUNTY.
### No. 1367.

**1. Public Road—Condemnation Without Notice.**
A county acquires no right to land taken by it for a public road by proceedings to lay off and establish the road of which notice is not given to the owner of the land as required by law.

**2. Same—Election of Remedies.**
Where a county takes land for a public road without notice or compensation to the owner, such owner, by the presentment to the Commissioners Court of a claim for the damages occasioned by the taking, and the institution of suit upon such claim, waives his right to recover the land so appropriated.

**3. Same—Limitation and Prescription—Re-entry.**
Where the owner of land over which there runs a public county road encloses the land, placing a fence across the road, which remains there until forcibly torn away by the sheriff without due process, this is a sufficient re-entry to interrupt the running of prescription and limitation in favor of the county.

**4. Interest—Damages.**
Where plaintiff suing for damages does not ask interest thereon in his pleadings, such interest will not be allowed, but the judgment will bear interest at the legal rate.

ERROR from San Saba. Tried below before Hon. W. M. ALLISON.

*Sidon Harris,* for plaintiffs in error.

*D. H. Meek,* for defendant in error.

COLLARD, ASSOCIATE JUSTICE.—This is the second time this suit has been before this Court. 1 Texas Civ. App., 480. After the decision of the court reversing the judgment and remanding the cause, November 23, 1892, plaintiffs amended their original petition by amendment filed December 2, 1893. The original suit was brought August 8, 1888, for damages against San Saba County for alleged unlawful appropriation of land by plaintiffs for a public road. The amended petition, filed December 2, 1893, shows that plaintiff, J. T. Cunningham, born November 8, 1850, Addie E. Leverett, born Cunningham March 24, 1857, joined by her husband, W. B. Leverett, to whom she was married September 28, 1881, H. C. Cunningham, born February 18, 1863, S. A. Callahan, born Cunningham April 9, 1854, joined by her husband, P. L. Callahan, to whom she was married April 2, 1874, and F. C. McDowell, born Cunningham October 1, 1851, joined by her husband, L. S. McDowell, to whom she has been married since the institution of this suit,—own the land over which the road passes, by inheritance from their father who died September 25, 1878; that on July 10, 1887, they each owned an undivided one-fifth of the land across which the road runs, a league and labor of land known as survey in the name of M. Guyton, and had the same inclosed in one body by a fence, and were in possession of the same when on the said date, July 10, 1887, defendant by force and arms broke and tore away the fence and opened a highway for public travel through the inclosure and across the land, coursing in a northeast zig-zag direction for one and one-half miles, from ten to seventy-five yards in width, to plaintiffs' damage $500, as alleged in the original petition. It is alleged that this claim was presented to the Commissioner's Court of San Saba County prior to the filing of this suit, and was rejected. It is also alleged that the road so made cut off 1200 acres of plaintiffs' land from permanent water, and has caused extra fencing on the part of plaintiffs for one and one-half miles through the survey; that defendant has continued to so trespass upon plaintiffs' land in the same manner since the institution of this suit, to their damage in the further sum of $500; that defendant refused all compensation for the trespass, refused to pay for the damages done the land, and had never condemned the land for a road by any lawful proceedings. Prayer for the alleged damages and costs, for restitution of the land, for writ of possession and to be quieted in their title and possession, and for all other relief in law and equity as entitled under the premises.

Defendant answered by amended answer, December 2, 1893, by general and special demurrer, that the damage claimed in the second count of the amended petition was never presented to the County Commissioner's Court for payment and rejected, and that plaintiffs, having elected

to sue for damages, could not now claim a recovery of the land and also for damages accruing since suit. Defendant also answered by general denial, and pleas of two years' limitation, and use of the road, claiming the same as a public road for more than ten years before suit.

Upon these pleadings the parties went to trial, waiving a jury, and the court upon hearing rendered judgment against all the plaintiffs except Mrs. S. A. Callahan, for whom judgment was rendered for $100 and interest, aggregating $143, as damages, and refusing decree for the land. All the plaintiffs except Mrs. Callahan and her husband have joined and brought the case to this court by writ of error.

There is no statement of facts in the record, the parties relying upon the facts as found by the court below. The facts as found by the trial judge show that he adopted facts as agreed on by the parties as per agreement filed, and also that he found other facts as stated in his findings of fact. The facts stated in the agreement are as follows:

Plaintiffs were born and married as follows: J. T. Cunningham, born November 8, 1850, unmarried; H. C. Cunningham, born February 18, 1862, unmarried; Mrs. Addie E. Leverett, born Cunningham March 24, 1857, and married her present husband, W. B. Leverett, September 28, 1881; Mrs. S. A. Callahan, born Cunningham April 9, 1854, married her present husband, P. L. Callahan, April 2, 1874; Miss F. C. Cunningham, born October 1, 1854, and unmarried. Plaintiffs reside as set forth in their petitions, and have resided in said counties since about the year 1886; prior to that time they resided in Rusk County, Texas. A second-class road is now and was at the institution of suit maintained by the county of San Saba over and across the land of plaintiffs, about the width and general course as set forth in their petitions, and said land was damaged in the amount as alleged in the petitions. Plaintiffs own the land as alleged in petition, and have so owned it since September 25, 1878. Plaintiffs acquired title to the land by inheritance from their father, who was demented about two or three years prior to his death on September 2, 1878. Their said father acquired title to the land by will from his brother, who died in 1847.

The road formerly known as the San Saba and Comanche road, but now known as the San Saba and Goldthwaite road, was traveled and used by the public across said land for fifteen or twenty years next prior to the year 1878. On May 16, 1877, a petition was filed, presented by the requisite number of free-holders, for a road of the second class, to be opened up from San Saba town via Grumble's ford on the San Saba river to the Chick crossing on the Colorado river, and on that day the Commissioner's Court granted said petition, and appointed a jury of view to view out and open a second-class road as asked for in said petition, and to report at next term of said court. On August 12, 1878, to which time no report had been made, the said jury of view made their report as follows: "We leave the court house, in town of San Saba, and run to the Rocky crossing on San Saba river; thence in a straight line to the crossing on Jerry's branch at the residence of J. W. Murray; thence

with the old Warren crossing road to the southwest corner of a rock fence belonging to L. D. Lidstone; thence north with said rock fence to its northwest corner; thence out back to the old Warren road; thence with said road to the Warren crossing on the Colorado river." The Rocky crossing on the San Saba river is about one mile above Grumble's ford on said river, and Warren crossing on the Colorado river is about two and one-half miles above the Chick crossing on said river.

The court received the report at said time, and ordered the said road opened, and appointed an overseer and apportioned hands to work it. These lands up to that time had never been inclosed. The jury of view gave no notice to any land owners over which said road would run of their intentions to view or open the road, nor did the court give any such notice, or make or offer any compensation, or assess any damages to any of said land owners for land taken by the road. Said road run substantially over the same land and along the same route as did the old San Saba and Comanche road prior to 1878, as aforesaid, varying in width in some places from ten feet to seventy-five yards where it got muddy— variations made by the traveling public.

Plaintiffs first came and took possession of said land on August 1, 1883. The road ran over their lands then, and was kept up open and free from obstructions and worked with overseer and hands apportioned by the Commissioner's Court of San Saba County from said date until the institution of this suit, and is still kept open and worked, with the exception of one week in July, 1887, when plaintiffs petitioned said court to change said road so as throw it off of survey number 80, and make it straight across survey 79. They got permission of the court to make the change, on condition that they made it on as good ground and but very little further, and appointed commissioners of precinct number one to examine said route and accept the change on said condition. The commissioners viewed the route and found it about one mile further around, and refused to accept it. Thereupon the plaintiffs undertook to change the route anyway, and fenced the road, of which complaint was made against two of the plaintiffs for obstructing a public road, and the county judge ordered the sheriff to open the road, which he did.

Plaintiffs also petitioned the court to change the road in 1885 from one place to another on their lands which suited their convenience better. The Commissioners' Court appointed overseers for said road and apportioned hands contiguous to the road from 1878 to 1889, inclusive, to work the road, but said overseers failed to make their reports each year until in 1884. The Commissioners' Court of said county never did surrender or abandon the road or any part of it at any time, even up to date of filing this suit. The country adjacent to plaintiffs' lands was mostly unfenced and sparsely settled, as was plaintiffs' land up till 1889, when they first began fencing. Plaintiffs first presented their claim to the Commissioner's Court of San Saba County for damages as set forth in their petition, and the said claims were rejected *in toto* by the court. In petitioning the court for a change in said road in 1885 and 1887, plaintiffs

insisted through their attorneys that there was not a legally established road across their land at said dates, except a plat which is of no advantage.

The judge who tried the case below filed conclusions of fact and law,—the facts as before stated,—and also that plaintiffs' original petition was read in evidence in which "plaintiffs' cause of action was for $500 for appropriating to public use a portion of their land by maintaining a highway forty feet wide across the same land described in the amended petition, for a distance of one and one-half miles, and cutting off several hundred acres of pasture land from permanent water. They did not, by their original petition, seek restitution and possession of the land, or ask that their title thereto be quited." The court concluded as a fact that at the August Term, 1878, of the County Commissioners Court, when the report of the jury of view was acted on and adopted, as shown by said agreement as to facts, said Commissioners Court appointed overseers for said road named in said report and the orders of said Commissioners Court, and apportioned the hands to work said road, and the overseers so appointed and the hands so apportioned did, between then and the February Term, 1879, of said Commissioners Court, work said road as a public road through and over plaintiffs' land, and the road over said land has been ever since that time claimed by said county as a public road under and by virtue of the proceedings and orders mentioned in said agreement, and under such claim has been maintained as a public road and has been worked and repaired every year since 1878 until the present time by overseers appointed and road-hands apportioned by said Commissioners Court. That where the road crosses the plaintiffs' land, the condition of the land was such that not a great deal of work was required to keep the road in good condition, but there was some timber and considerable brush on plaintiffs' land where the road passed over it, and the timber was cut out of the road, the brush cleared off, and every year the road-hands would cut off the brush, and particularly the mesquite sprouts in the road, dig up the stumps, round or trim them off, and cut down any tree that might be found to be an obstruction. In the year 1889 not much work was done on the road. The most of the work shown to have been done on the road was in the years 1879, 1880, 1881, 1882 and 1883. But little evidence was offered as to the kind of work done after 1883. If plaintiffs had gone on their land at any time after February, 1879, they would have learned that the road was there being maintained and worked as public roads were then usually worked and maintained in the county; that until the year 1885 or 1886, plaintiffs did not know the boundaries of their land, and did not know that they extended so far north as to include any part of said road. The mile posts numbered from the town of San Saba, number 1 being one mile from San Saba. The fifth and sixth mile posts are on plaintiffs' survey number 80, and the seventh and eighth mile posts are on plaintiffs' survey number 79, and they were at or near the same point in the year 1888, or before, as they are now."

As conclusions of law the trial judge filed the following:

"1.　That plaintiffs not having alleged or proved that they presented to the Commissioners Court their claim for damages accruing since the filing of their original petition they are not entitled to recover anything on account of such damages.

"2.　That the jury of view having given no notice to plaintiffs of their intention to lay off the road on their land, the county acquired no right to the road by the proceedings of the Commissioners Court set forth in said agreement.

"3.　That the defendant having from the year 1878 until the year 1893 claimed the right to said road as a public road under and by said proceedings in said Commissioners Court, and having caused the same to be worked and maintained as above found, it had acquired a right to same as a highway by prescription before the filing of plaintiffs' amended petition on December 2, 1893, except as against the plaintiff Mrs. S. A. Callahan, who has been a married woman since the year 1874.

"4.　That all the plaintiffs except said Mrs. S. A. Callahan are barred by the two years statute of limitation, pleaded by defendant from recovering damages for the appropriation of any part of said land by the county for a highway.

"5.　By the presentment of their claim for damages to the Commissioners Court and the institution of this suit therefor the plaintiffs made their election of remedies, and cannot now maintain an action for the recovery of the land appropriated.

"6.　That the running of the statute of limitations was not interrupted by the plaintiffs placing a fence across said road, and maintaining it across the road for about a week during the year 1887, as shown by said agreement.

"7.　That said Mrs. Callahan and husband, plaintiffs, is entitled to judgment against defendant for $100, with interest at the rate of 8 per cent. per annum from August 9, 1888, but the other plaintiffs are not entitled to recover."

*Opinion.*—Adhering to the law, as announced in our former opinion in this case, as the points were then presented, we should hold that the conclusion reached by the court below is correct, except as to one question, which we did not decide on the first appeal. The lower court says, "that the running of the statute of limitations was not interrupted by plaintiffs placing a fence across said road and maintaining it across the road for about a week during the year 1887, as shown by said agreement." This was incorrect; the statute, in our opinion, was interrupted by such acts of plaintiffs. Upon this finding the whole case of the plaintiffs in error rests. If the court below was correct, then it would follow that the action for damages would be barred as to all the plaintiffs except Mrs. Callahan, as determined by the court below. But if the contrary be true, then there was no prescription in favor of the county, this suit having been brought in 1888, less than two years from the second actual disseizin by the county. Under the facts as stated, the time of limita-

tion or prescription would have to begin over again, at the time of the last disseizin, in 1887, at which time a new cause of action would arise in favor of plaintiffs. The suit for damages was brought in the following year, and in time to prevent the bar by the two years' statute.

If the county's right to the road had been perfected by prescription before suit no suit for damages would lie, as the prescriptive right would extinguish such claim, though it may be based upon a continuing injury. But the county did not acquire the easement to the road by prescription, because of the re-entry by plaintiffs before the prescriptive right matured. It is the law that a casual re-entry by the disseized owner, as by stealth, or the mere walking over his land, will not disturb the possession of the disseizor. But an actual re-entry, asserting his claim to the land by the performance of some unequivocal act that disturbs and denies the right of the disseizor would regain the possession for the owner. Burrows v. Gallup, 32 Conn., 498, 499.

The disseizin must be continuous and uninterrupted on the part of the county to avail as limitation or prescription; if it be interrupted before the period of prescription has elapsed prescription is annihilated, and must begin de novo. Shellhouse v. State, 110 Ind., 512; State v. Green, 41 Ia., 693; Webster v. Lowell, 142 Mass., 341; Bodfish v. Bodfish, 105 Mass., 319; Jones v. Davis, 35 Wis., 377; Wing, Admr., v. Hall., 47 Vt., 182; 2 Rich., 136; Tied. on Real Prop., sec. 704; 2 Wood on Lim., sec. 270, pp. 688 and 689; Elliott's Roads and Streets, p. 137.

If the re-entry by the owner be destroyed by legal proceedings, as by a recovery in forcible entry and detainer, the statute would not be arrested, but in this case there was no such regaining of the possession by the county. The sheriff tore away the fence erected by the owners upon the simple order of the county judge. The re-entry of the owners was complete; the road was fenced with the intention of asserting their right, by which the public were prevented from its use. Such an obstruction was placed in the way that complaint was made against two of the plaintiffs for obstructing a public road. Under such facts it must be held that the disseizin of the county was complete. Its possession was interrupted, the continuity of time was broken, and possession would only commence from the time of the last disseizin by the county, which gave a new cause of action to the owners, and which was not barred when the suit was brought. It was not barred as to any of the plaintiffs, and upon the express admission by the parties that plaintiffs were damaged "in the amounts respectively as alleged in said petitions", the court below should have rendered judgment for each of the plaintiffs, J. T. Cunningham, Addie E. Leverett, H. C. Cunningham, S. A. Callahan and F. C. McDowell, for the sum of $100, or $500 for all the plaintiffs in the aggregate, to bear interest at six per cent. from the date of the judgment below, the 7th day of December, 1893. The plaintiffs did not ask for interest on their damages, but merely for $500 damages which was admitted to be due, and hence we do not allow interest on the damages, as plaintiffs can only on their pleadings recover $500 damages, but allow six

per cent. on the same from the date of the judgment of the court below. We here render such judgment as should have been rendered by that court, $100 to each of the owners, plaintiffs, except Mrs. Callahan. It is ordered that such judgment be here rendered in accordance with the foregoing and for plaintiffs for all costs incurred in the court below and on this writ of error, except as to Mrs. Callahan, who has not appealed and who has judgment not appealed from in the court below.

*Reversed and rendered.*

Delivered November 27, 1895.

### ON MOTION FOR REHEARING.

COLLARD, ASSOCIATE JUSTICE.—The statutes referred to in the motion for a rehearing (Code Cr. Proc., articles 124, 125) cannot avail the county, as in case of forcible entry and detainer proceeding, to continue the running of the statute in favor of the county, appellants having regained possession by building a fence across the road, because the county judge had no authority to issue the order to the sheriff to remove the obstruction across any road, except when the road was made a public highway "by proper authority." The road in this case was never at any time made a public highway by "proper authority," and the county had no title to the road as a public road by prescription, when appellants regained possession. Article 124 reads: "Whenever any road, bridge or crossing of any stream is made by proper authority no person shall place an obstruction across such highway," etc. Article 125 reads: "After indictment or information presented against any person for violating the preceding article any one, in behalf of the public, may apply to the county judge of the county in which such highway is situated, and upon having proof, such judge, either in term time or in vacation, may issue his written order to the sheriff or other proper officer of the county directing him to remove the obstruction," etc. If this summary proceeding should be held in a proper case to have the effect of continuing the statute of limitation in force where possession of the county has been interrupted by a claimant of the land through which the road runs, as would be the effect of a recovery by the county in case of forcible entry, it could not apply except where the road is a public highway, made so by proper authority. The statute was improperly invoked against appellants, and it did not authorize the county judge to issue the order. They had not violated the statute. See "Roads, Bridges and Ferries," chap. 1, Revised Statutes, p. 630 et seq., and former opinion in this case. The motion is overruled.

*Overruled.*

Delivered January 29, 1896.