## Texas & Pacific Railway Company v. H. D. Arnold.

### Delivered April 24, 1897.

**1. Railroad Company—Negligence—Shipper's Contract to Care for Live-stock.**

A shipper of live stock who by special contract undertakes to feed, water, and care for them at his own risk and expense, is not relieved of the duty of so doing because of negligent delay by the carrier—especially where he continues to avail himself of the benefits of the contract by accepting free passage to the end of his journey.

**2. Evidence—Burden of Proof—Cattle Damaged in Shipment.**

The owner of cattle who accompanies the same under a special contract to care for them, and who is given the opportunity to do so, has the burden of proving, where they reach their destination in a damaged condition, that such condition is due to negligence or breach of contract on the part of the carrier.

**3. Measure of Damages—Cattle Injured in Shipment.**

The measure of damages for cattle injured in shipment is the difference in value of the cattle uninjured at the point of destination and their value at such point in injured condition.

Appeal from the County Court of Palo Pinto. Tried below before Hon. D. M. Hood.

*Daniel & Speer,* for appellant.—1. The measure of damages for cattle injured is the difference in their market value at the point of destination at the time and in the condition in which they should have been delivered, and their market value at said place at the time and in the condition in which they were delivered. Railway v. Klepper, 24 S. W. Rep., 567; Railway v. Grant, 26 S. W. Rep., 286.

2. If there was delay, the appellee or his agents had no right to abandon his contract to care for and feed and water the cattle, but it was the duty of his agents to care for and feed and water them, if necessary. Rev. Stats., art. 326; Railway v. Daggett, 28 S. W. Rep., 525.

3. The burden of proof was upon the appellee to show negligence on the part of appellant, and if he failed to do so he should not be allowed to recover. 3 Am. and Eng. Encyc. of Law, p. 16h, and notes.

No brief for appellee reached the Reporter.

STEPHENS, Associate Justice.—This is a case in which the shipper of cattle between two points in Texas undertook by special contract to feed and water and take care of them at his own risk and expense. After the cattle were loaded at Atlanta, Texas, destined for shipment over appellant's line of railway to Weatherford, Texas, the owner, appellee Arnold, placed them in charge of G. V. Crawford and A. M. Dodd, but instructed them not to water and feed the cattle while in transit, the run between the two points named not being a very long one. But the train was delayed, and the conductor at several points along the route offered the parties in charge, Crawford and Dodd, an opportunity to feed and water the cattle, and indeed advised and urged them to do so,

but they refused, upon the ground that they had been otherwise instructed by the owner. When the cattle reached their destination several of them were already dead, and others died soon thereafter, to say nothing of those that were injured and survived. The damages claimed and recovered to cover this loss were alleged to have resulted from the negligence of appellant in delaying the train, and in failing to feed and water the cattle, and in the rough manner in which they were handled by negligent switching, etc.

The court, among others, gave the following special charge at the request of counsel for appellee: "And you are further charged, that if you find from the evidence that the said defendant railway company was, as alleged by plaintiff, negligent by delaying its train upon which said cattle were loaded and being transported, the plaintiff herein is relieved of the responsibility to feed and water the same, even though you should find he had especially agreed to do so, and that it was the duty of defendant company, if such delay occurred, to feed and water and properly care for said cattle." And refused the following special charge requested by counsel for appellant: "You are charged, gentlemen, that if the plaintiff contracted to feed and water the said cattle at his own expense while being shipped from Atlanta to Weatherford, Texas, then you are charged that it was plaintiff's duty so to do, and if his agents and employes refused to feed and water the said cattle, if they were offered an opportunity so to do by the agents and employes of the defendant, and if you find that any of the damage claimed was caused from such failure to stop and water and feed, then you will find for the defendant for any such damages so caused, and so say by your verdict."

In the case of the Fort Worth & Denver City Railway v. Daggett, 27 Southwestern Reporter, 186, it was held by this court, Justice Head dissenting, that, to quote from the opinion of Chief Justice Tarlton, "the extent of the duty undertaken by the shipper to water and feed the cattle must be determined by the character of the correlative obligation of the carrier to transport without unreasonable delay; and, the obligation of the latter having been violated, that of the shipper ceased," citing Lawson on Carriers, p. 191, and Kenney v. Railway, 59 Barb., 104. This holding proceeded upon the familiar principle that a reciprocal obligation, to be kept in force against either party, must be observed by the other. That is to say, when the shipper by special contract relieved the common carrier of its primary duty as such to feed, water, and take care of the cattle while on board its cars and in course of transportation, it was upon the condition that the carrier would not be guilty of any unreasonable delay; and when the carrier failed to meet this condition, its attempt by means of the special contract to transfer its primary duty to the shipper failed. The case then stood, the shipper electing to rescind the special contract, as it would have stood had no such contract been made, with the duty to feed, water, and take care of the cattle resting as a common law duty on the carrier. 4 Elliott on Railroads, sec. 1553. It was not, therefore, thought reasonable to permit the carrier by means of its own violation

of duty to impose on the shipper an obligation which rested primarily upon it, and which it had failed to successfully transfer to the shipper by not keeping its own part of the contract.

The doctrine of avoidable consequences was not thought by the majority of the court to be applicable in such case—so much so that it was not discussed—but rather the qualification of that doctrine as thus stated in 1 Sutherland on Damages (second edition), last of section 88: "Where the party whose duty it is primarily to do the work necessary to fulfill the contract and to prevent damage from past failure, or to stay injuries resulting from his negligence or other wrong, is in possession or has equal knowledge and opportunity, he alone may be looked to to fulfill that duty, and it will not avail him to say the injured party might have lessened the damages by performing the duty for him." This qualification of that doctrine seems at one time to have been approved by our Supreme Court, as will be seen from the following quotation from the opinion of Chief Justice Stayton in Railway v. Mackie, 71 Texas, 492: "It is not necessary in this case to undertake definitely to determine under what states of fact the rule insisted upon may have application, but we do feel authorized to hold, from an examination of the cases to which we have access, that a party whose duty it is to perform a service necessary to the fulfillment of his contract, and to prevent injury to result from its violation, may in all cases be looked to to fulfill that duty when he has equal knowledge and opportunity; and that he can not be heard to urge, in defense of an action based on his own breach of contract and consequent violation of duty, either for the purpose of defeating the action or lessening the damages, that the injured party might have secured the performance of the contract and thereby have prevented or lessened the injury by paying to him an additional compensation to induce him to perform the duty which he had already been fully paid to perform. 1 Suth. on Dam., 150."

Our Supreme Court, as now constituted, however, granted a writ of error in the Daggett case, and, in an opinion by Justice Denman, in effect overruled the views above expressed, and sustained the dissent of Judge Head; and that decision must now be accepted as authority in this court, whatever may have been our individual views of the questions involved. 87 Texas, 322; 28 S. W. Rep., 525.

But independent of that decision, as the shipper in the case at bar did not elect to rescind the special contract on account of the breach of obligation on the part of the carrier, but through his agents continued to avail himself of the benefits of the special contract by accepting free passage to the end of the journey, it would seem that he could not escape the obligation to feed, water, and otherwise take care of the cattle. Crawford and Dodd were carried by appellant for that very purpose, and they ought either to have taken care of the cattle or ceased to ride.

The action of the court in giving and refusing the charges above quoted seems therefore to be erroneous in principle, as well as in conflict with the Daggett decision, and necessitates a reversal of the judgment.

We are also of opinion, from other charges given and refused, that the court must have entertained the view that, because the cattle reached their destination in a damaged condition, the burden rested upon the appellant to show that this did not result from a breach of its duty as a common carrier. That this is the general rule is well settled, at least in shipments of dead freight, where the property shipped is in the exclusive possession of the carrier. But in shipments of live stock, where the owner accompanies the stock under a special contract to take care of them himself, and is given an opportunity to do so, the reason for the rule, that the facts are peculiarly, if not exclusively, within the knowledge of the carrier, does not apply, and hence the rule itself is held to be inapplicable.

Mr. Elliott, in his late valuable work on Railroads, volume 4, section 1549, in discussing this subject, uses the following language: "So, where the owner accompanies the stock under a special contract to care for them himself, he may well be presumed to be as well acquainted with the facts in regard to their loss or injury as the carrier, and as they may have been injured because of his own negligence, or because of their inherent nature and propensities, and not by the negligence of the carrier, it is but just to require him to show the facts. The rule in such cases, therefore, is that the burden of proof is upon the plaintiff to show that a breach of duty upon the part of the carrier caused the injury or loss; and if the carrier is liable only for negligence, the burden is upon the plaintiff to show such negligence." The cases cited support the text, and particularly that of Railway v. Sherwood, 132 Indiana, 129 (31 Northeastern Reporter, 781), which discusses at length the reason of the rule and reviews the authorities.

Applying this doctrine to the case at bar, we think it devolved upon the appellee, it being undisputed that he undertook to feed and water and take care of the cattle through his agents, who positively refused to avail themselves of the opportunities repeatedly tendered by the appellant to discharge that duty, in order to successfully maintain the issue on his part, to show not only that the cattle were killed and injured, but also that this resulted from a breach of duty on the part of appellant, and not from any fault of himself or his agents. For a discussion of the effect of the shipper's conduct in failing to properly care for his cattle upon his right to recover, and the extent thereof, see the opinion of Justice Denman in the Daggett case above cited.

In stating the measure of damages for the cattle injured and not killed, the court's charge was incorrect, in that it stated the measure to be the "difference in value of said cattle (uninjured) at point of shipment and their value (injured) at point of destination;" when it should have made the difference in value of the cattle in the two conditions named at the same point, that of destination, the test. Railway v. Klepper, 24 S. W. Rep., 567.

The special exceptions contained in the second supplemental answer to the third amended original petition should probably have been sus-

tained, had they been filed in the due order of pleading; but as these objections can easily be obviated by amendment, they need not be further considered.

Several other questions are raised by the appellant's brief, but we deem it unnecessary to discuss them.

Upon the conclusions before announced, the judgment is reversed and the cause remanded for a new trial.

*Reversed and remanded.*