FT. WORTH & D. C. RY. CO. v. ALLEN et al. (No. 1053.)

(Court of Civil Appeals of Texas. Amarillo. Oct. 25, 1916. On Motion for Rehearing, Nov. 29, 1916.)

1. COURTS ⟨⇒⟩169(4)—JURISDICTION—AMOUNT —INTEREST.

A cause of action does not exceed the jurisdiction of the court by the addition of interest as damages if at the time the suit is filed the amount in controversy falls within the court's jurisdiction.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 419, 420, 429–436; Dec. Dig. ⟨⇒⟩169(4).]

2. INTEREST ⟨⇒⟩66 — RECOVERY — DEMAND — PLEADING.

In an action for damages to a shipment of live stock in the sum of $974, with a prayer for general relief, but without any special demand for interest as a part of the damages, interest might be allowed as a part of the damages, but to recover such interest the damages claimed in the pleadings must be laid in a sum sufficient to cover the loss at the time of the accrual of the cause of action, with interest thereon, from that date to the trial, and, where damages are not laid to such amount, the recovery is limited to the amount claimed.

[Ed. Note.—For other cases, see Interest, Cent. Dig. § 147; Dec. Dig. ⟨⇒⟩66.]

3. COURTS ⟨⇒⟩169(4)—JURISDICTION—DAMAGES—INTEREST.

Where damages are laid at a certain sum, with interest thereon at 6 per cent., the interest is then accumulated as a part of the damages, and is to be included in the amount of recovery, as affecting jurisdiction.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 419, 420, 429–436; Dec. Dig. ⟨⇒⟩169(4).]

4. CARRIERS ⟨⇒⟩219(5) — LIVE STOCK — CONTRACT—LIABILITY—CONNECTING CARRIERS.

Under separate contracts for the shipment of live stock, limiting the carriers' liability to injury to the cattle on their respective lines, the terminal carrier could not be charged with the negligence of a connecting carrier.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. § 950; Dec. Dig. ⟨⇒⟩219(5).]

5. CARRIERS ⟨⇒⟩228(1)—LIVE STOCK—NEGLIGENCE—BURDEN OF PROOF.

On a shipment of cattle, where the shipper accompanies them, and, under a special contract, assumes the specific duty to care for them, and the cattle are injured by lack of feed and water, the burden is upon the shipper to show negligence.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 957, 958; Dec. Dig. ⟨⇒⟩228(1).]

6. DAMAGES ⟨⇒⟩62(3)—NEGLIGENCE—MITIGATION.

Where a shipment of live stock is injured by the carrier's negligence, the shipper must use all reasonable means at his command to lessen the damages which would otherwise result from such negligence, and his failure to do so will limit his recovery to such damages as would have resulted from such negligence, had such means been used.

[Ed. Note.—For other cases, see Damages, Cent. Dig. §§ 124–127; Dec. Dig. ⟨⇒⟩62(3).]

**7. CARRIERS ⬳211—LIVE STOCK—FACILITIES FOR FEEDING AND WATERING.**

A carrier is required to furnish reasonable facilities and opportunities for feeding and watering stock shipped under a contract, requiring the shipper to care for them.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 926–928; Dec. Dig. ⬳211.]

**8. CARRIERS ⬳217(1)—LIVE STOCK—NEGLIGENCE—CONTRIBUTORY NEGLIGENCE.**

Under separate contracts for the shipment of live stock requiring the shipper to care for, feed, and water the stock in the yards, and to unload and reload for any purpose at his own expense, and to hold the carrier harmless on account of damages to the stock while in charge of the shipper, based upon the shipper's free transportation, the duty devolved upon the shipper as an ordinarily prudent person to feed and water the stock, and if that was not done under the necessities of the trip, considering the length of time in transportation and the condition of the stock, the carrier was not liable for the resulting damages from shrinkage.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. § 931; Dec. Dig. ⬳217(1).]

**9. CARRIERS ⬳229(2)—INJURY TO LIVE STOCK—DAMAGES—DOUBLE DAMAGES.**

In an action for damages to a shipment of live stock, the increased expense in caring for the stock for the purpose of recuperation could not be recovered in addition to loss from shrinkage, as it would be double damages.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. § 964; Dec. Dig. ⬳229(2).]

**10. COSTS ⬳48—LOSING PARTY—CODEFENDANTS—DISMISSAL AS TO PART.**

In an action against several carriers under separate contracts for damages to a shipment of live stock, all the costs of the trial could not be charged against the defendant against whom judgment was had, in the event that other defendants were dismissed from the cause.

[Ed. Note.—For other cases, see Costs, Cent. Dig. §§ 129, 192–210; Dec. Dig. ⬳48.]

On Motion for Rehearing.

**11. CARRIERS ⬳227(2)—LIVE STOCK—ACTION FOR DAMAGES — PLEADING — CONTRIBUTORY NEGLIGENCE.**

In an action for damages to a shipment of live stock under a contract whereby the shipper was to care for, feed, and water the stock in the yards or pens, and to unload and reload them for any purpose at his expense, and to hold the carrier harmless against damage while in his charge, except that resulting from the carrier's negligence, where the shipper alleged that the cattle were confined in the cars and pens for more than 49 hours without food, water, or rest and the carrier's failure in its duty, and where the answers specifically pleaded the contract, that the shipper accompanied the shipment, but did not expressly aver that he failed in his duty or that the damages resulted from his negligence, though asserting that "that plaintiff should be held estopped from setting up and recovering herein on his alleged cause of action," there was a sufficient allegation of contributory negligence to enable the shipper to meet it.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. § 954; Dec. Dig. ⬳227(2).]

Appeal from Dallam County Court; T. S. Mills, Judge.

Action by R. L. Allen against the Ft. Worth & Denver City Railway Company and others. Judgment for plaintiff against the Ft. Worth & Denver City Railway Company, and it appeals. Reversed and remanded.

J. Y. Powell, of Dalhart, and Thompson & Barwise, of Ft. Worth, for appellant. Tatum & Tatum, of Dalhart, for appellees.

HENDRICKS, J. The appellee Allen sued the Wichita Valley Railway Company, the Kansas City, Mexico & Orient Railway Company of Texas, and the Ft. Worth & Denver City Railway Company for alleged damages to a shipment of 338 head of cattle, started on March 2, 1915, from Jayton, Tex., destined Channing, Tex.

The Wichita Valley Railway Company initiated the shipment, transporting the cattle to Sagerton, Tex., there delivering the same to the defendant Kansas City, Mexico & Orient Railway Company, which transported the cattle to Chillicothe, Tex.; thence over the line of the defendant Ft. Worth & Denver City Railway Company, to Channing, Tex., the point of final destination.

The defendant railway companies pleaded that each respectively handled and transported the plaintiff's cattle and that the shipment was accepted and handled by each solely under the terms of a written contract executed between plaintiff and each defendant separately, by the terms of which contracts each defendant limited its liability to injury occurring upon its own line. It is also defensively pleaded that each of said contracts provided that plaintiff was to care for, feed, water, and attend to the stock in the yards or pens at the point of shipment or elsewhere, and to load, unload, and reload at transfer points, or wherever said stock might be unloaded for any purpose, at his own expense, and that each of said defendants were to be held harmless on account of any loss or damage occurring to the stock while in the charge of plaintiff, except such as resulted from the negligence of the defendants.

The case was tried before the court without a jury, resulting in a judgment that plaintiff take nothing against the defendants the Wichita Valley Railway Company and the Kansas City, Mexico & Orient Railway Company of Texas, but that he recover from the defendant Ft. Worth & Denver City Railway Company the sum of $711, with 6 per cent. interest.

[1] The appellant, the Ft. Worth & Denver City Railway Company, suggests to this court a purported fundamental error, involving the question of jurisdiction of the county court in which the judgment was rendered.

The plaintiff in his petition sued for the sum of $974, and prayed:

"That upon a hearing hereof he have a judgment against the defendants for the sum of $974 as actual damages; * * * that he be granted all other relief, both general and special, in law and in equity, to which he may be justly entitled."

The principal position is, affecting the question of jurisdiction, that:

---

"At the time this cause was tried, January 24, 1916, interest at 6 per cent. per annum from the date of the accrual of the cause of action amounted to $51,95, making the total amount sued for and prayed for by plaintiff $1,025.95, a sum beyond the jurisdiction of the county court."

Assuming that that part of the prayer wherein plaintiff asked that he be granted all other relief, general and special, in law and in equity, "to which he may be justly entitled," would ordinarily be considered a demand for legal interest as part of the damages, still there is an essential fact, producing, as we think, the interposition of a different jurisdictional principle which would prevent the application of the rule contended for by appellant. If, as stated by appellant, plaintiff's cause of action accrued March 4, 1915, and if it would be concluded, as argued, that the original petition upon which the case was tried demanded interest on the $974, however, the petition was filed May 26, 1914. At that time interest as damages, added to the original amount sued for as actual damages, came within the jurisdiction of the county court. If we understand the rule correctly, it is elementary that a cause of action does not grow out of the jurisdiction of the court by the addition of interest as damages if at the time the suit is filed the amount in controversy falls within that court's jurisdiction.

"Had not this wise rule been adopted, a suit might easily outgrow, by the accrual of interest during its pendency, the jurisdiction of the forum in which it was originally properly brought; for it is settled that in such suits the original petition need not specifically include interest accrued or to accrue." Western Union Telegraph Co. v. Garner, 83 S. W. 433.

Justice Gill further said in that cause that:

"While the rule that a plaintiff may not recover more than he demands is not applicable in its strictness to interest as interest, it is applied to interest recoverable by way of damages, and its application is rendered necessary by the fact that, while interest eo nomine is not taken into consideration in determining the jurisdiction, interest as damages is an item which must be taken into account, * * * but, because it is an item going to make up the sum total of plaintiff's demand, it must perforce be held to be included in the sum total so stated. This was distinctly ruled in Railway Co. v. Addison, 96 Tex. 61, 70 S. W. 200. Were this not true, the difficulty would be presented here which the legislative provision as to interest as such was designed to avoid, and if the litigation pended long enough it would outgrow the court in which the suit was brought."

Among others, appellant cites the case of International & Great Northern Ry. Co. v. Perkins, 184 S. W. 725, decided by this court. We also cite the case of Railway Co. v. Fromme, 98 Tex. 461, 84 S. W. 1054, upon which the Perkins Case is based, with the cases of Railway Co. v. Jackson, 62 Tex. 209, and Railway Co. v. Greathouse, 82 Tex. 104, 17 S. W. 834, infra. In the Fromme Case, supra, the question of the jurisdiction of the Court of Civil Appeals only was involved. Justice Brown held that the language of the statute limiting the right of appeal from the county court of Goliad county, " 'where the judgment or amount in controversy does not exceed $100.00,' fixes the date of the judgment in the county court as the time at which the amount of recovery must be ascertained to determine jurisdiction." The case of Railway Co. v. Perkins, supra, also involved the question only of the jurisdiction of this court, and a similar ruling was made. In this record the question of the county court's jurisdiction is involved, and we think the distinction is clear and the rule efficacious as applied to this character of case in sustaining the jurisdiction of the county court in entertaining the cause.

[2] There is another phase of this question made rather complicated by the state of the decisions, in this: It is noted that the damages laid in the original petition in this case were in the sum of $974, with a prayer which we construe as one only for general relief, without any special allegation or demand for interest as a part of the damages. As close an analysis as we are able to give, without the actual records before us, of the cases of Railway Co. v. Jackson, 62 Tex. 209, and Railway Co. v. Greathouse, 82 Tex. 104, 17 S. W. 834, followed by us in the Perkins Case, supra, it would seem that interest as damages could be recoverable without any special prayer or special allegation for interest as a part of the damages. However, later the Court of Civil Appeals of the First District certified a similar question as involved in this record to the Supreme Court, as follows: A suit was instituted in the justice court against the San Antonio & Aransas Pass Railway Company for $130 damages arising on account of a shipment of horses. The Court of Civil Appeals said in its certificate:

"The appellant has an assignment of error to the effect that the court erred in rendering judgment for 6 per cent. interest on the amount recovered from the date of the injury because the pleadings of the plaintiff did not ask for such relief. Under the authority of Railway Co. v. Jackson, 62 Tex. 209, and Railway Co. v. Greathouse, 82 Tex. 104, 17 S. W. 834, * * * and in view of the fact that the plaintiff's petition prays for general relief, we have ruled against the appellant on this assignment."

Chief Justice Gaines said:

"In cases of this character interest may be allowed by way of indemnification, as a part of the damages, but is never allowed eo nomine; and therefore, in order to recover interest, the damages claimed in the pleadings must be laid in a sufficient amount to recover the loss at the time of the accrual of the cause of action, and the interest thereon from that date to the time of the trial. In this case the damages claimed were only $130. The recovery was necessarily limited to that amount." S. A. & A. P. Ry. Co. v. Addison, 96 Tex. 63, 64, 70 S. W. 200, 201.

A decision on the particular question was not necessary, and it was so stated by Chief Justice Gaines. However, it is noted that the cases of Railway Company v. Jackson and Railway Co. v. Greathouse, supra, were called to the attention of the Supreme Court

by the Court of Civil Appeals in its certificate, and the Addison Case must be regarded as authority. See, also, Western Union Telegraph Co. v. Garner, 83 S. W. 433; First National Bank v. Cleland, 36 Tex. Civ. App. 478, 479, 82 S. W. 337 (writ of error denied); Railway Co. v. McMillan, 37 Tex. Civ. App. 483, 84 S. W. 296; Railway Co. v. Starks, 109 S. W. 1003, 1004; Cunningham v. San Saba County, 11 Tex. Civ. App. 563, 32 S. W. 928, 33 S. W. 892; Railway Co. v. Hooser, 44 Tex. Civ. App. 231–232, 97 S. W. 708; Texarkana Water Co. v. Kizer, 63 S. W. 913.

[3] The case of Railway Co. v. Rayzor, by the Supreme Court, 172 S. W. 1105, also seems to predicate the question of interest as damages, wherein a matter of jurisdiction was involved, upon the character of demand and the state of the pleadings, in alleging interest. The distinction, though is to be observed where damages are laid at a certain sum "with interest thereon at the rate of 6 per cent. per annum." The interest is then cumulative as a part of the damages, and is to be included in the amount of recovery affecting the jurisdiction. Schulz v. Tessman & Bros., 92 Tex. 490, 49 S. W. 1032; also Baker v. Smelser, 88 Tex. 29, 29 S. W. 377, 33 L. R. A. 163.

The case of International & Great Northern Ry. Co. v. Perkins, 184 S. W. 725, in construing the prayer for general relief as carrying the interest as damages in the state of the pleadings shown therein, is modified to the extent as indicated in this opinion.

We think the county court, viewing the petition in the light of the authorities, had jurisdiction of the cause of action.

[4-8] The cause on its merits shows that the appellee Allen ordered the cars for the shipment of the 338 head of cattle from the Wichita Valley Railway Company's agent at Jayton, to be loaded March 2d. The agent informed appellee to have the cattle in the pens in time for shipment at 8 o'clock that morning. The cattle were delivered in the pens on the evening of March 1, 1915, and appellee testified there were no facilities in the pens at Jayton for watering or feeding the cattle, and they did not get them loaded until about 10 o'clock a. m. March 2d. He accompanied the shipment over the entire route and executed three separate contracts of shipment containing provisions of a limitation of liability as to injuries to the cattle on the respective lines of the connecting carriers, said contracts also stipulating that the shipper was to care for, feed, water, and attend the stock at his own expense while in the yards or pens or in the course of transportation.

The cattle arrived at Childress, one of the divisions on the line of the Ft. Worth & Denver City Railway, at 7:40 a. m., March 3, 1915. At that time the cattle had not been watered since the afternoon or evening of March 1st, before they were penned to Jayton. It is not definite at what time in the afternoon or evening the cattle were watered previous to penning the same at Jayton, but the court is entitled to the conclusion that these cattle must have gone some 30 hours or more without feed and water upon arrival at Childress. At Childress the appellee says the chief dispatcher informed him that he wanted to get his cattle to Channing by 6 o'clock that same evening, and unless he could get them there by that time he preferred to unload for feed and water at Childress. He had a pasture arranged for, situated about a mile out of Channing, and desired to reach there by that time for the purpose of taking his cattle to that pasture. The chief dispatcher informed him that they had a through freight train to take the cattle out of Childress, and they "ought" to get to Channing at the time mentioned. The cattle arrived at Amarillo, the next division, at 5 o'clock p. m. March 3, 1915, but were not unloaded for feed, water, or rest at that division, and neither was any request made by the shipper that he be permitted to unload for that purpose at that point. The principal delay was in the shipment of the cattle from Amarillo to Channing, a distance of 52 miles, it taking several hours to go up what is designated as "Magenta Hill," south of Channing, and the train was handled roughly making this particular hill. "The cattle were on the train about 49 hours from the time they were tendered for shipment until delivered at Channing, being without feed or water during that time, except a little hay thrown in the pens at Channing." The shipper knew before starting with the shipment there were no facilities at Channing for the purpose of watering and feeding said cattle. According to plaintiff's testimony, they arrived at Channing about 1 a. m. in the night. The cattle arrived at Amarillo at 5 p. m. March 3, 1915, and, having left Jayton at 10 a. m. March 2d, according to appellee's testimony, this would make the cattle about 31 hours upon the train without feed, water, and rest; and if you add the period of time intervening between the time during the evening of March 1st when the cattle were last watered there would be a period of nearly 40 hours that these particular cattle were deprived of that particular sustenance between Jayton and Amarillo. In a shipment of cattle, where the shipper accompanies the cattle, and under a special contract assumes the duty to care for the same, if the cattle are injured for lack of feed and water, "the burden is upon the plaintiff to show negligence." Texas & Pac. Ry. Co. v. Arnold, 40 S. W. 831.

Under the contract, based upon the consideration of free transportation, the duty devolved upon the shipper, and it was a matter addressed to his judgment, as an ordinarily prudent person, to feed and water the particular cattle; at least, if it were not done under the necessities of the trip,

considering the length of time in transportation and the condition of the cattle, the failure from which damage resulted should not be visited upon the carrier. The general rule applies to the shipment of cattle as in any other condition:

"That, where one is injured by the negligence of another, the person injured must use all reasonable means at his command to avert or lessen the damage which would otherwise result from such negligence, and his failure to do so will limit his recovery to such damages as would have resulted from such negligence had such means been used. * * *" Railway Co. v. Daggett, 87 Tex. 327, 28 S. W. 527.

There is no showing whatever in the record that he requested the railway company or its agents at any point to water these cattle, except as shown under the conditions existent at Childress. These cattle should have been watered at Childress, even though the chief dispatcher informed him that the train ought to get to Channing by 6 o'clock. Of course, the shipper could act upon the expression of the chief dispatcher as an ordinarily prudent man, and be impressed with the belief that the cattle would arrive at Channing by 6 o'clock, but the shipper also knew that they had not been watered since the afternoon or evening before penning them at Jayton for shipment. Of course, a carrier is required to furnish reasonable facilities and opportunities for feeding and watering stock shipped under a contract requiring the shipper to care for his cattle; but in this case it is shown in the record that the shipper did not have that consideration for his own cattle that an ordinarily prudent person should have had, and when the complaint is made as the burden of the injury in this case, and the gravamen of the negligence of the carrier asserted, that they were 48 or 49 hours on the cars without feed, water, or rest, it is also shown that the principal portion of the damage to these cattle was produced by the contributory negligence upon the part of the shipper. It is clearly deducible from the record that the judge in this instance, in awarding $711 damages for injury to the cattle, did so to a considerable extent on account of the deprivation of feed, water, and rest and the length of time the cattle were on the cars. We do not think that he could have based such a judgment upon the handling of these cattle and the delay from Amarillo to Channing, and, though there is a general expression of rough handling on the defendants' line of road, testified to by the shipper, the court, no doubt, predicated the damage principally upon the conditions stated. The shipper testified in regard to the lack of facilities at Jayton for feeding and watering cattle and a two hours' delay at that point in starting the cattle. This, of course, under the character of contract of limited liability, and no contract for through transportation having been shown, could not be charged against the

189 S.W.—49

Denver. Railway Co. v. Jones, 104 Tex. 96, 134 S. W. 328.

[9] It is raised in different phases in appellants belief that the shipper was guilty of contributory negligence in failing to care for his own cattle. This court will not permit this judgment to stand. We are not deciding that the shipper is not entitled to some damages, but we hold that on account of the apparent contributory negligence of the shipper, and on account of the testimony of the plaintiff with reference to the lack of facilities for feeding and watering the cattle at Jayton, Tex., this appellant should not be charged with the shrinkage and injury to these particular cattle which the judgment implies the court held it guilty of. The increased expense in caring for the cattle for the purpose of recuperation can neither be recovered. It would be double damages.

"To make the plaintiff whole, he should recover a sufficient sum to enable him to sell the injured property and replace it with that which is uninjured." Panhandle & Santa Fé Ry. Co. v. Norton (decided October 16, 1916) 188 S. W. 1011, and cases cited.

[10] The difference in market value is the criterion. The trial court should not charge all the costs of the trial against the Denver, in the event the other roads are dismissed from the cause, as decreed in this judgment.

Reversed and remanded.

### On Motion for Rehearing.

The appellee in the motion for rehearing, referring to the judgment of the trial court with reference to the assessment of damages, says:

"Having the right and power to assess against the appellant such damages as he found from the evidence that the plaintiff sustained by reason of appellant's negligence, this court cannot, as we understand the law, presume that the trial court, in awarding damages, did so to a great extent on account of the failure to feed, water, and rest the said cattle, and the length of time they were en route, and there is no evidence to justify the conclusion of this court in the opinion rendered herein."

We will not analyze the testimony again, except with the general statement that the burden of appellee's testimony and of his witnesses was upon the question of the length of time these cattle were en route and confined in the cars without feed, water, and rest. We assume, of course, that he did not base such a judgment partially on the expenses of the plaintiff in recuperating his cattle, for the reason that such would be clearly double damages. If the trial court did not award the damages "to a great extent on account of the failure to feed, water, and rest said cattle," we would be at a loss to know upon what he predicated such a judgment.

[11] Appellee did not brief this case, and in the motion for rehearing the position is strenuously presented and argued that there is no plea of contributory negligence of the owner accompanying the cattle by the carrier

upon which this court could have reversed the trial court's judgment.

The answer specifically pleaded the terms of the written contract of shipment and that the shipper assumed, at his own risk and expense, to care for, feed, and water the stock in the course of transportation, and also charged that the plaintiff covenanted and agreed to hold "said carrier harmless on account of any loss or damage to his said stock while being so in his charge, * * * except such damages as may result from the negligence of the carrier."

Paragraph 11 of defendant's answer, in substance, alleges that plaintiff accompanied the shipment. It is true there is no averment that the plaintiff failed in his duty or that the damages or any part of same resulted from the negligence of the shipper, unless it could be said that the final allegation, asserting "that plaintiff should be held estopped from setting up and recovering herein on his alleged cause of action," constitutes such an allegation.

Plaintiff alleges as one of the grounds of negligence (which the statement of facts shows constituted the principal injury to the cattle) "that said cattle were confined in the defendants' cars and pens for more than 49 hours, without food, water, or rest," also alleging that the railway company negligently in its duty in that respect.

When the plaintiff charges a duty and a violation of the same as a ground of negligence, and a consequent liability against the carrier, and the defendant pleads and shows a written contract that the very same duty so charged against it, for a valuable consideration, was assumed by the plaintiff, logically upon whom would the burden of proof then exist to further proceed with the question of negligence?

"The fact that the owner accompanies the stock and takes charge of it may also be important upon the question of contributory negligence. So, where the owner accompanies the stock under a special contract to care for them himself, he may well be presumed to be as well acquainted with the facts in regard to their loss or injury as the carrier, and, as they may have been injured because of his own negligence, or because of their inherent nature and propensities, and not by the negligence of the carrier, it is but just to require him to show the facts. The rule in such cases, therefore, is that the burden of proof is upon the plaintiff to show that a breach of duty upon the part of the carrier caused the injury or loss, and if the carrier is liable only for negligence, the burden is upon the plaintiff to show such negligence." Elliott on Railroads, vol. 4, § 1549.

As supporting the text, among others, the following authorities are cited: Railway Co. v. Sherwood, 132 Ind. 129, 31 N. E. 781, 17 L. R. A. 339, 32 Am. St. Rep. 239; Clark v. Railway Company, 64 Mo. 440; Railway Co.

v. Weakly, 50 Ark. 397, 8 S. W. 134, 7 Am. St. Rep. 104; Railway Co. v. Hedger, 72 Ky. (9 Bush) 645, 15 Am. Rep. 740; Grieve v. Railway Co., 104 Iowa, 659, 74 N. W. 192, 193. Thompson, in his Commentaries on the Law of Negligence, expresses the same rule (volume 6, § 7714).

Justice Stephens, in the case of Texas & Pacific Railway Co. v. Arnold, 16 Tex. Civ. App. 76, 77, 40 S. W. 829, announces the same doctrine, particularly quoting the text from Elliott on Railroads in support of the rule. The same rule is also announced in the case of Railway Co. v. Vaughan, 41 S. W. 415.

The Supreme Court of Iowa said, speaking of this character of contract:

"All this, however, the plaintiff had assumed to do, and, if his failure therein was caused by any act of the defendant, he knew what it was as well as the company. If he demanded facilities for unloading the cattle, or for feeding and watering them, and these were not provided, or were refused, then the burden would be cast on the defendant to excuse itself for not so doing. * * * The burden is certainly on the shipper, in the first instance, to show that the injury did not result from his own negligence, and, if occasioned by failure to do what he has undertaken, then that such failure resulted from an omission on the part of the company to perform some duty devolving upon it. This conclusion has ample support in the authorities." Grieve v. Illinois Central Railway Co., supra, 104 Iowa, 664, 74 N. W. 193.

When the carrier pleaded a contract, based upon a valuable consideration, that the shipper agreed to perform the very duty that he alleges the carrier should have performed (the lack of which constituted negligence), it is clear to this court that, logically, if his failure to perform the duty which he agreed to perform was caused by any act of the defendant, he was well aware of what that act was, and could have alleged and proved it. He agreed to hold the carrier "harmless" for damages to the cattle on account of failure to perform the particular duty which he charges the railroad company should have performed. When the written contract is shown the plaintiff's duty is exhibited, and he should show, in order to impress the railroad company with the particular damages, that he was excused from the performance. We can find no authority really contrary to such a logical doctrine.

The appellee suggests a remittitur in the event the motion is overruled. On another trial, under the testimony, the jury probably could better determine the damages based on the negligence of the railway company for which it would be liable, and have a more determinable rule to ascertain this than we have in this record.

The motion for rehearing is in all things overruled.